## WOODWARD *v.* STEWART, receiver.

1. The general rule in this State is that directors of a bank must exercise ordinary care and diligence in the administration of its affairs. The active management of the bank may be delegated to certain offices authorized to manage its business. The directors, however, must exercise a reasonable supervision over such officers.
2. The petition, construed as a whole, after the amendments were allowed, failed to set out a cause of action, in that no duty resting upon the plaintiff in error (a director in the bank) was specifically pointed out as having been violated; and therefore no breach of duty upon his part was alleged, under the by-laws of the bank or under the laws of the State of Georgia.
3. The foregoing being controlling of the case, it is unnecessary to deal specifically with the other assignments of error.

No. 1341. DECEMBER 12, 1919. REHEARING DENIED JANUARY 17, 1920.

Equitable petition. Before Judge Pendleton. Fulton superior court. January 22, 1919.

*Brewster, Howell & Heyman,* for plaintiff in error.

*E. A. Neely, George Westmoreland, A. C. Broom,* and *J. F. Golightly,* contra.

HILL, J. The judge of the superior court of Fulton County, in response to a petition filed by three named stockholders of the Citizens Bank of East Point, made an order requiring the receiver of the bank to bring suit against the directors of the bank, to require them to account to the stockholders for their loss by reason of the alleged failure of the directors to perform their duty, or duties, as such. Suit was accordingly filed by the receiver against several persons alleged to be the directors of the bank. The petition alleged that the bank had lost large sums of money on account of bad loans made by the cashier of the bank, by reason of the negligence and nonfeasance on the part of the directors, and because of the failure of the directors to perform the duties required of them by the by-laws of the bank and the laws of the State of Georgia. The prayers of the petition were, for a judgment against the defendants, for the use of three named stockholders, for the cost of their stock to them, besides interest, after deducting dividends which had been paid upon the stock; that such other persons as might be similarly situated be permitted to come in and be made parties to the case; and that judgment be rendered for such persons; and that the directors be required to account to all stockholders, not directors, for any loss sustained by them by reason of the negligence of the defendants. The plaintiff in error, J. C. Woodward, filed general and special demurrers to the petition. The several grounds of the special demurrer were sustained, save one; but the court did not pass upon the general demurrer at that time and allowed the plaintiff thirty days within which to amend. Within the time allowed the plaintiff offered several amendments for the purpose of curing the defects pointed out by the special demurrer. The amendments were allowed over the objection of the defendant on the ground that the petition, as it stood, set out no cause of action against him, and did not contain enough to amend by. Woodward also renewed his original demurrer to the amendment as offered, and also to the petition as a whole after the amendment was allowed. Certain paragraphs of the amendment were stricken on special demurrer; after which all the demurrers were overruled, and Woodward excepted.

The question to be determined is, what is the measure of duty imposed upon bank directors by the laws of this State and the by-laws of the bank, and whether the plaintiff in error is liable to

other stockholders of the Citizens Bank of East Point, who are not directors, for a breach of such duty under the allegations of the petition. In other words, what is the degree of care which should be exercised by directors of a bank in the performance of their duties? And does the petition show such breach of duty? In 2 Thompson on Corporations (2d ed.), § 1265, the author, after stating that the courts are not agreed upon the extent of the liability of directors, says that they are practically unanimous on the proposition that directors are bound to administer the affairs of the corporation according to the terms of the charter, or governing statute, with diligence and in good faith; and that if they fail in either respect, they are liable to the party in interest who is injured by such breach of trust, and a court of equity will compel an accounting. This liability of directors to the corporation for damages caused by the negligent or unauthorized acts is said to rest upon the common-law rule which renders every agent liable who violates his authority or neglects his duty, to the damage of his principal. And it is now generally agreed, continues the same author, that no matter whether the act is prohibited by the charter or by-laws, the liability is on the ground of violation of authority, or neglect of duty. See also, to the same effect, 10 Cyc. 828 (19m).

The degree of care required of directors is thus laid down in Thompson on Corp. § 1266: "The measure of liability must necessarily be the degree of care required, and the degree of care which directors are bound to exercise depends on their relation to the corporation. The courts that adhere to the principle that directors are the agents of the corporation apply to them the same rules in the measure of liability as those imposed upon the agents of natural persons who receive a compensation for their services. The general rule as to the measure of care, skill, and diligence required of the directors of a corporation may be said to be such as prudent men exercise in the conduct of their own affairs, and this must be determined in each case in view of the circumstances. The rule as otherwise expressed is that directors must answer for ordinary neglect; and 'ordinary neglect' is understood to be the omission of that care which every man of common prudence takes of his own concerns. In a recent Missouri case, on the examination and citation of many authorities, the court adopted the rule that the directors of a bank were only required to act in good faith and

to exercise such a degree of care as a reasonably prudent man would exercise under the same circumstances; that they were not bound to that degree of care which a prudent man would exercise in his own business.   The stockholders divest themselves of the immediate control of their property and select directors as agents to manage and control the affairs of the corporation, and they expect, and have the right to expect, that the persons so selected will exercise ordinary care and prudence in the trusts thus committed to them, the same degree of care and diligence that men prompted by self-interest generally exercise in their own affairs.   'When one voluntarily takes the position of trustee or director of a corporation, good faith, exact justice, and public policy unite in requiring of him such a degree of care and prudence, and it is a gross breach of duty—crassa negligentia—not to bestow them.' "

In Stone v. Rottman, 183 Mo. 552 (82 S. W. 76), Fox, J., delivered the opinion of the court, and set forth with approval the language of the referee in that case, who said: "The degree of care directors are bound to exercise cannot be better stated than in the opinion of Chief Justice Fuller in the leading case of Briggs v. Spaulding, 141 U. S. 132, l. c. 150 [11 Sup. Ct. 924, 930, 35 L. ed. 662]: 'No one of the defendants is charged with the misappropriation or misapplication of, or interference with, any property of the bank, nor with carelessness in respect to any particular property; but with the omission of duty which, if performed, would have prevented certain losses, in respect of which complainant seeks to charge them. . . Treated as a cause of action in favor of the corporation, a liability of this kind should not lightly be imposed in the absence of any element of positive misfeasance, and solely upon the ground of passive negligence; and it must be made to appear that the losses for which defendants are required to respond were the natural and necessary consequences of omission on their part. . . In any view the degree of care to which these defendants are bound is that which ordinarily prudent and diligent men would exercise under similar circumstances, and in determining that the restrictions of the statute and the usages of business should be taken into account. What may be negligence in one case may not be want of ordinary care in another, and the question of negligence is therefore ultimately a question of fact, to be determined under all the circumstances.' And again, in the same

case (page 165), he says: 'We hold that directors must exercise ordinary care and prudence in the administration of the affairs of the bank, and that this includes something more than officiating as figureheads. They are entitled under the law to commit the banking business, as defined, to their duly authorized officers, but this does not absolve them from the duty of reasonable supervision, nor ought they to be permitted to be shielded from liability because of want of knowledge of wrongdoing, if that ignorance is the result of gross inattention.' Judge Hughes said, in Trustees *v.* Bossieux, 3 Fed. 818, s. c. 4 Hughes, 387: 'If, by reckless inattention to the duties confided to them by their corporation, frauds and misconduct are perpetrated by officers, agents, and codirectors, which ordinary care on their part would have prevented, then I think it may be said with truth that it is now elementary law, to be found in all the books, that directors are personally liable for the losses resulting; i. e., for gross negligence, or what the jurists call 'crassa negligentia.' Stapleton *v.* Odell, 47 N. Y. Supp. 15 [21 Misc. 94]; Savings Bank *v.* Caperton, 8 S. W. 885 [87 Ky. 306, 12 Am. St. R. 488]. The referee is of the opinion that the director of a bank is only required to act in good faith, and to exercise such a degree of care as a reasonably prudent man would exercise under the same circumstances. He is not bound to exercise the same degree of care which a prudent man would exercise in his own business. This is too high a standard. 'To expect a director under such circumstances to give the affairs of the bank the same care that he takes of his own business is unreasonable, and few responsible men would be willing to serve upon such terms. In the case of a city bank doing a large business, he would be obliged to abandon his own affairs entirely. A business man generally understands the details of his own business, but a bank director cannot grasp the details of a large bank without devoting all his time to it, to the utter neglect of his own affairs.' Swentzel *v.* Penn. Bank, 147 Pa. St. 140 [23 Atl. 405, 415, 15 L. R. A. 305, 30 Am. St. R. 718]. A director is expected to attend the meetings of the board with reasonable regularity, and to exercise a general supervision and control. He is not required to know the details or contents of the books and papers. 'The framers of the organic and of the statute law must be held to have understood how the business of a bank is conducted. They must have known that

the directors are drawn from the busiest men in the community; men who have carved success out of chaos, who have succeeded where the great multitude have failed; men who are not expected, and could not afford, to give their whole time to the business of the bank. The lawmakers knew that the active management of a bank usually devolves upon the president and cashier, and that to the latter is usually entrusted the management of the details. They knew that few directors had the time, and fewer still the capacity, to examine the books of a bank and ascertain its solvency; that even in their own business they could not take off a trial balance from the books they employed experts to keep for them, either because they had not the time to do so for themselves or because they did not have the capacity to do so.' Utley *v.* Hill, 155 Mo. 232, l. c. 265 [55 S. W. 1091, 49 L. R. A. 323, 78 Am. St. R. 569]; Queen *v.* Hincks, 10 Cent. L. J. 127 (cited in Thompson on Liability of Agents, etc., p. 477); Dunn *v.* Kyle, 14 Bush [Ky.], 134; Savings Bank *v.* Caperton, [supra]. The custom of appointing discount and examining committees to attend to the details of the management of the business of a bank is a reasonable one, and one almost necessary in the conduct of banks in large cities, where directors are drawn from the busiest men in the community, who cannot be expected to give sufficient time to grasp the details of the business. Morse on Banking (3d. ed.), §§ 115, 116; Thompson on Liability of Officers and Agents, etc., p. 477 et seq., § 3998." And see the leading case of Briggs *v.* Spaulding, 141 U. S. 132, which is the basis of the decision in Stone *v.* Rottman, supra.

The Civil Code of this State (1910), § 2267, defines the duties of directors of State banks as follows: "The business of the corporation shall be under the management and control of a board of directors, to consist of not less than three nor more than fifteen members of the corporation, who must be owners and holders of one or more shares of the capital stock in good faith. The board of directors shall exercise only such powers as may be legally delegated to them by the stockholders, or by the by-laws adopted by the stockholders. The board of directors shall be elected by the stockholders at such time and place, and for such term, as may be appointed by the by-laws." It will thus be seen that the directors can only exercise such powers as may be legally delegated

40

to them by the stockholders, or by the by-laws adopted by the stockholders of the bank. No powers other than those delegated by the by-laws were conferred on the directors in the present case, so far as the record discloses. What powers, then, were conferred by the by-laws? The petition sets out only two sections of the by-laws of the Citizens Bank of East Point, as follows: "Section 14. The regular meetings of the Board of Directors shall be held on the first Monday of January, April, July, and October of each year. Special meetings may be called by the president, cashier, or at the request of three or more directors; and should there be no quorum at any regular or special meeting, the members may adjourn from day to day until a quorum is in attendance. In the absence of a quorum no business shall be transacted." "Section 15. There shall be a committee, to be known as the Finance Committee, consisting of the president, cashier, and three directors, appointed by the Board every twelve months, to continue to act until succeeded, who shall have power to discount and purchase bills, notes, and other evidences of debt, and to buy and sell bills of exchange. . . Said finance committee shall have the power to authorize the cashier, upon his own judgment and discretion, to loan to any person, firm, or corporation, any sum not exceeding the sum of two hundred and fifty dollars, his or their standing indebtedness to the bank to be taken into consideration." It thus appears from section 15 of the by-laws, that one of the duties of the finance committee, which is composed of the cashier and three directors, imposed by the by-laws, is to authorize the cashier, upon his own judgment and discretion, to lend any sum not exceeding two hundred and fifty dollars, etc. Beyond that amount the cashier is not authorized to lend. It is charged in the petition in general terms that "it was the duty of the directors of the bank to look after the business of the bank, conserve its interests and watch its affairs, and to protect its assets," but no specific duty is pointed out as being violated by the plaintiff in error under any law of this State or any by-law of the bank. It does not appear that he was a member of the finance committee, whose duty it was to supervise the lending of money of the bank in amounts exceeding two hundred and fifty dollars. Paragraph 2 of the petition alleges "That the defendants are" certain named persons, including J. C. Woodward the plaintiff in error, and giving their places of residence.

Paragraph 4 alleges: "Petitioner avers that all of said defendants were, during the existence of said bank and at the time said bank was placed in the hands of a receiver, duly appointed and elected directors of said bank." Paragraph 4 was stricken on special demurrer. The first amendment to the petition alleges, that there was a finance committee appointed for said bank; that H. L. Johnson was one of the members of this finance committee, but plaintiff is now unable to state who were the other two members of said committee, but he will be able to prove this fact, at the trial, by the said H. L. Johnson; that said finance committee never acted on any of said loans and credits set forth in the petition, but negligently permitted the cashier to make same in violation of the by-laws of the bank; that it was the duty of all directors who were not members of said finance committee to supervise the said finance committee; and that their duties in this regard were violated by said directors. The second amendment attempted to meet the objections raised to the petition by the demurrers, by setting out specific acts of alleged negligence on the part of the directors. The first instance, in paragraph 29, was as follows, and was typical of the others: "Petitioner amends paragraph seventeen of the original petition, by amplifying the allegations thereof as follows: (a) That on December 10, 1914, G. B. Finley drew check on the Citizens Bank of East Point, payable to D. C. Lyle, for fifteen hundred dollars ($1500), and that said check was cashed by the Citizens Bank of East Point. (b) That on January 12, 1915, G. B. Finley drew check on the Citizens Bank of East Point for thirty-three hundred dollars ($3300) in favor of D. C. Lyle, which said check was honored by the said Citizens Bank of East Point. At the time the bank was placed in the hands of a receiver the said two items, aggregating forty-eight hundred dollars ($4800) appeared in the assets of the said bank as cash items, and petitioner avers represented an overdraft on the part of said G. B. Finley of the said forty-eight hundred dollars ($4800), the said G. B. Finley being insolvent, as petitioner is informed and believes, and said items representing a loss to said bank of said forty-eight hundred dollars ($4800); that had the defendants properly represented the said bank as directors in the line of their duty as such, that the said loss to the said bank could not have occurred."

In *McEwen* v. *Kelly,* 140 *Ga.* 720 (79 S. E. 777), it was held that "Directors of a trading corporation must exercise ordinary care and prudence in the administration of its affairs. They may commit the active management of the business to authorized officers; but this will not relieve them from the duty of reasonable supervision.". In delivering the opinion of the court in the *McEwen* case, Lumpkin, J., said: "Directors are agents, but they are also agents clothed with a fiduciary character; and while they are not express or technical trustees, they are. selected to manage the affairs and property of the corporation for its benefit, and they bear to it and to its stockholders a relation which in many respects may be called a trust relation; and thus by numerous courts they have been called trustees. Aside from any express statutory liability, those who accept the position of directors impliedly undertake to exercise ordinary care and diligence in discharge of the duties thus committed to them. They may commit the active transaction of the business to duly authorized officers; but this does nót absolve them from the duty of reasonable supervision. Some courts have declared that they are only liable for gross negligence or breach of duty resulting in injury. But in some, probably most, of the cases so declaring, it will be found that the failure of directors to use ordinary care in supervision has been treated as amounting to gross negligence." This case was cited with approval in *Griffin* v. *State,* 142 *Ga.* 636, 640 (83 S. E. 540, L. R. A. 1915C, 716, Ann. Cas. 1916C, 80). Whatever the rule is at common law, or in other jurisdictions, the general rule in this State is that directors of a bank must exercise ordinary care and diligence in, the administration of the affairs of the bank, and that the active management of the bank may be delegated to certain officers authorized to manage the business of the bank. A reasonable supervision of such officers, however, is incumbent upon the directors.

In the light of the principles above announced, how stands this case? From what has been said with reference to the allegations of the petition, which must be construed more strongly against the pleader, nothing appears showing a joint action of the board of directors, as such, authorizing the loans above two hundred and fifty dollars, which proved worthless, so as to hold the directors jointly liable. Nor is it made to appear by the petition that the

plaintiff in error is liable for any personal or specific neglect or failure of duty, under the by-laws of the bank or the laws of the State, towards the bank. It is not alleged that he had knowledge of the fact that the debtors, alleged to be insolvent, were so when the unauthorized loans were made by the cashier, or afterwards, or that he had cause to suspect it. This being so, we do not think the allegations of the petition are sufficient to make the plaintiff in error liable. Throughout, the allegations of the petition are vague, indefinite, and general as to a breach of duty by the plaintiff in error, and are lacking in any specific charge that the plaintiff in error was guilty of any definite breach of duty under the by-laws of the bank or the laws of the State, resulting in damage to the corporation or its creditors. The petition construed as a whole, after the amendments were allowed, and in the light of the foregoing rulings, failed to set out a cause of action against the plaintiff in error. No specific duty resting upon him, either under the Civil Code, § 2267, or other statute or law, or the by-laws of the banking corporation, was pointed out as having been violated or omitted by him. Therefore no specific breach of duty or law upon his part was alleged; and this being so, the court erred in over-ruling the demurrer to the petition. In this view of the case it is unnecessary to further deal with the question as to whether the amendment met the objections raised by the special demurrers to the petition, and whether the directors were sued as such; nor as to whether the receiver had the right to sue, for the reason that he had no title to the property of the bank in himself, etc. In the latter connection see *Hardwick* v. *Hook,* 8 *Ga.* 354; 1 Clark on Receivers, § 232.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent. Gilbert, J., concurs specially.*