SHANNON *et al.* *v.* MOBLEY, superintendent of banks.

1. "Under the act creating the banking department of Georgia (Ga. Laws 1919, p. 135), the superintendent of banks is authorized to sue in his

own name, or in the name of the bank, on any claim, debt, or demand due said bank, on which the bank could sue."

2. In 1922 the General Assembly amended the banking act of 1919, with reference to the power already conferred upon the superintendent of banks to bring suit, as follows: "For the purpose of executing any of the powers and performing any of the duties hereby conferred upon him, the superintendent may, in the name of the bank, institute, prosecute, and defend any and all actions, suits, and legal proceedings, including suits against its directors or officers, or any of them, upon any cause of action which is vested by law in such bank or in stockholders or creditors thereof." Ga. Laws 1922, p. 65, paragraph 3.

3. The act of 1922, supra, did not expressly or impliedly repeal any authority conferred by the act of 1919 upon the superintendent of banks touching the question here involved.

4. Applying the above principles, the superintendent of banks was authorized to bring the present suit either in his own name in his official capacity, or in the name of the bank. Such a suit brought by the superintendent of banks in his own name is amendable so as to make the case proceed in the name of the bank. *Anderson* v. *Bennett*, 160 *Ga.* 517 (128 S. E. 660).

5. Paragraph 3 of the amendments in the act of 1922 (Ga. Laws 1922, p. 65), amending article 7 of the act of 1919, entitled "An Act to regulate banking in the State of Georgia," etc., does not violate article 3, section 7, paragraph 8, of the constitution of Georgia (Civil Code, § 6437). Compare *Fite* v. *Henson*, 157 *Ga.* 679 (122 S. E. 412); *Felton* v. *Bennett*, 163 *Ga.* 849 (137 S. E. 264).

6. The prayer for an accounting is appropriate and pertinent for the purpose of ascertaining the amounts necessary to be recovered to repay losses, and to adjust the liabilities of the several directors, some of whom had served as directors longer than others.

7. The ground of the demurrer based upon the contention that the suit is premature, that it is impossible to ascertain from the petition any definite amount of liability, and that no certain, fixed amount of liability can be ascertained until all of the assets, rights, and credits of the bank have been exhausted and reduced to cash, in view of the allegations as to renewal of the loans, is without merit. *Weslosky* v. *Quarterman*, 123 *Ga.* 312 (51 S. E. 426).

8. The ground of demurrer based upon the contention that the plaintiff can not recover "for an alleged act of negligence of the board of directors of the bank" was properly overruled. Ga. Laws 1922, p. 65, paragraph 3.

9. There is no merit in the ground of demurrer which contends that the defendants can not be sued as "a body composed of a board of directors," and that the allegations of the petition show that the personnel of the board changed during the period of the alleged negligence, and that "the plaintiff seeks to recover for the mixed conduct of different boards of directors as constituted at different periods of time and composed of different persons."

10. Where the officers and directors of a bank, in violation of the banking laws, make worthless loans and thereby become personally liable, suits against them are not barred by the statute of limitations, when, as alleged in this petition, such loans were renewed - from time to time

under circumstances authorizing a finding of fact that such renewal was a neglect of duty imposed by law, and when suit is filed within the period of limitation, as computed from the date of renewal. Compare *Lamar* v. *Taylor*, 141 *Ga.* 227 (5), 236 (80 S. E. 1085).

11. The petition set out a cause of action, and was therefore good against general demurrer. It was amended to cure defects indicated by a special demurrer. The court did not err in overruling both demurrers.

No. 6464. MAY 17, 1928. REHEARING DENIED JUNE 13, 1928.

Complaint. Before Judge Camp. Twiggs superior court. January 19, 1928.

Under authority of the State banking act, A. B. Mobley, superintendent of banks, took over the affairs of the Twiggs County Bank on July 14, 1926. On July 23, 1927, the superintendent filed suit against the officers and directors of said bank, his petition, as amended, alleging that said officers and directors were charged under the law with strictest caution in all the bank's doings, including administration, investments, investigation of collaterals and securities in moneys loaned, for protection of depositors and stockholders; that nevertheless they had failed to do this, and had so mismanaged and neglected said affairs that the bank had become insolvent, whereby depositors had sustained large losses, investments of stockholders had been swept away, and they had become liable upon assessments of 100 per cent. on their stock for benefit of depositors; that the defendants entered into a contract with a corporation known as the Bankers Trust Company, of Atlanta, by which said trust company was made the financial agent of said bank, and the defendants allowed the trust company to invest a large portion of the bank's funds, and to control all of its business save that of a purely local nature; that the trust company would place for the bank various funds not being utilized, and would send it commercial paper which the bank accepted and paid for without question, such paper amounting to $81,414.56, besides interest, at the time the superintendent took over said bank; that said paper was in fact such as the officers of the trust company in most instances owned directly or indirectly, personally or by associated corporations, mostly without good security, and the bank accepted the same and paid for it out of the moneys of depositors, without proper investigation; that most of such paper was renewed from time to time, which was sufficient to put the bank on notice that it was of questionable character, yet no investigations were made nor were collections insisted upon; that said paper was a part of the assets

of the bank when it closed, and caused said large losses. The petition set out some thirty-odd pieces of such commercial paper, describing same in full, and showing wherein, as it alleged, such paper, promissory notes, were secured by indorsements of or properties controlled by officers of said trust company; no investigation of solvency of the borrowers was made, the trust company retaining custody of collaterals, and using said bank simply as a buyer for its own paper. It was alleged that, as a result of these doings, depositors in said bank would lose $75,000 or other large sum; that said bank permitted said trust company to lend other funds belonging to it to other banks in the chain controlled by said trust company; that as a result said bank had to borrow money, but instead of borrowing from said trust company it borrowed from outside concerns, the Fourth National Bank of Macon being one lender for $15,000; that said bank wrongfully advertised that its depositors were insured against loss, and paid the sum of $2,702.70 into a depositors' guarantee fund, operated by the Bankers Trust Company, to so insure them, but said sum was squandered by the trustees thereof, yet no effort was made to keep information on what was being done with said fund; that said defendants bought $7,500 of the trust company's stock with bank funds, and bought other stock of banks in said chain, though this was not a proper investment for the bank to make; that in fact the defendants did a great many things indicating they were not interested in the rights of depositors, such as paying 6 per cent. interest to the president of said bank, and to his wife, in certain certificates of deposit, when other depositors were paid only 5 per cent.; that in fact all said misdoings had resulted in losses to stockholders and depositors in the sum of $100,000, for which defendants were liable; that the liabilities of the bank to depositors were $197,383.39; that the superintendent had been able to pay a dividend of 35 per cent., and other assets would be enough to pay no more than 15 per cent., so that there would be due depositors, after exhaustion of all assets, more than $100,000. The petition prayed for judgment against the defendants and each of them for $100,000; that an accounting be had in order to enter a judgment in the correct sum lost; and that the amount necessary to pay depositors and other creditors in full, and reimburse stockholders who had paid their assessments levied to meet said losses liquidated, be ascertained, and that judgment be

28

had against defendants, if it were held that said losses were due to their misconduct, for the value of said stock after crediting amounts realized from assets of the bank.

The defendants demurred on the grounds that the superintendent could not bring this suit in his own name; that it failed to show facts on which he could recover, and set up no cause of action; that it showed nothing from which liability could be ascertained; that the banking department could not sue for negligence of bank directors; that the petition sought to recover on alleged conduct of mixed boards of directors, said board having, as alleged, changed in personnel at stated times; that the allegations of misconduct were mere conclusions; that certain of said pieces of commercial paper were taken by said bank more than four years prior to said suit, and as to them the suit was barred; that the renewals set up did not prevent operation of the statute of limitation, as liabilities, if any existed, accrued when the loans were made; that no accounting could be prayed unless there were mutual accounts between plaintiff and defendants, and the suit did not show it was not prematurely brought; and that the act under which the suit was brought, approved August 21, 1922, amending the banking act of 1919 and an amendment thereof, was unconstitutional and void, in that said 1922 amendment contains the provision in section 7a, "including suits against its directors or officers, or any of them, upon any cause of action which is vested by law in such bank," which language is in violation of article 3, section 7, paragraph 8, of the constitution of Georgia, prohibiting any enactment of matter that is not indicated in the title of the act, and the amending act of 1922 did not include in its title any right of the superintendent to maintain an action in tort against bank directors for alleged negligence in lending money.

The court overruled the demurrer, and the defendants excepted.

*L. D. Moore* and *J. D. Shannon,* for plaintiffs in error.

*Orville A. Park* and *C. N. Davie,* contra.

GILBERT, J. In the very nature of the business, good faith and strict integrity on the part of officers and directors of banks, are required. Banking institutions can not exist without such confidence. The commerce of the world rests largely upon confidence in banking corporations. People in all ranks of society require their services. "When one voluntarily takes the position of trustee

or director of a corporation, good faith, exact justice, and public policy unite in requiring of him such a degree of care and prudence, and it is a gross breach of duty—crassa negligentia—not to bestow them." Hun v. Cary, 82 N. Y. 65 (37 Am. R. 546), quoted approvingly in *Woodward* v. *Stewart,* 149 *Ga.* 620, 623 (101 S. E. 749). If the qualities of integrity, diligence, and loyalty are required in any institution more than in others, it would seem to be in banking institutions. The measure of duty imposed by law upon bank directors in this State is discussed in the case just cited, to which general reference is made. The first headnote in that case is as follows: "The general rule in this State is that directors of a bank must exercise ordinary care and diligence in the administration of its affairs. The active management of the bank may be delegated to certain officers authorized to manage its business. The directors, however, must exercise a reasonable supervision over such officers." In Briggs v. Spaulding, 141 U. S. 132 (11 Sup. Ct. 924, 35 L. ed. 662), Mr. Chief Justice Fuller said: "No one of the defendants is charged with the misappropriation or misapplication of, or interference with, any property of the bank, nor with carelessness in respect to any particular property; but with the omission of duty, which, if performed, would have prevented certain specified losses, in respect of which complainant seeks to charge them. . . Treated as a cause of action in favor of the corporation, a liability of this kind should not lightly be imposed in the absence of any element of positive misfeasance, and solely upon the ground of passive negligence; and it must be made to appear that the losses for which defendants are required to respond were the natural and necessary consequence of omission on their part. . . In any view the degree of care to which these defendants were bound is that which ordinarily prudent and diligent men would exercise under similar circumstances, and in determining that the restrictions of the statute and the usages of business should be taken into account. What may be negligence in one case may not be want of ordinary care in another, and the question of negligence is therefore ultimately a question of fact, to be determined under all the circumstances." It was said by Judge Hughes in Trustees v. Bosseiux, 3 Fed. 828: "If, by reckless inattention to the duties confided to them by their corporation, frauds and misconduct are perpetrated by officers, agents, and codirectors, which ordinary care on their part would

have prevented, then I think it may be said with truth that it is now elementary law, to be found in all the books, that directors are personally liable for the losses resulting." And this court, through Mr. Justice Lumpkin, declared in *McEwen* v. *Kelly,* 140 *Ga.* 720, 724 (79 S. E. 777) : "Unfortunately some directors appear to think that they have fully discharged their duties by acting as figureheads and dummies; but this is a mistake, and a delusion from which some of them are now and then awakened by a judgment for damages arising from allowing the corporation to be looted while they sat negligently by and looked wise." It was further said in *Marietta Trust &c. Co.* v. *Faw,* 31 *Ga. App.* 507, 508 (3*a*) (121 S. E. 244) : "A director of a bank has duties to perform more essential than that of allowing his name to be printed on the bank's stationery; and negligent ignorance is sometimes equivalent to knowledge. Penal Code (1910), § 204."

The banking law provides: "Each director, when elected, shall take an oath that he will, so far as the duty devolves upon him, diligently and honestly administer the affairs of the bank, and that he will not knowingly violate, or willingly permit to be violated, any of the provisions of law applicable to such bank or any of the by-laws thereof." Ga. Laws 1919, p. 192, § 3. The banking law also strictly prohibits excessive loans and loans upon insufficient or worthless collateral, and requires the directors at stated periods to supervise these matters. If the allegations of this petition are correct and sustained by proof, the superintendent of banks ought to recover. On demurrer the facts alleged must be accepted as true. We hold, therefore, that the petition set out a cause of action, and that it was not error to overrule the demurrers.

*Judgment affirmed. All the Justices concur.*