18857. MOBLEY, superintendent of banks, *v.* MINTER *et al.*

*O. A. Park, C. N. Davie, J. F. Kemp,* for plaintiff.
*Slade & Swift,* for defendant.

LUKE, J. A. B. Mobley, superintendent of banks for the State of Georgia, brought an action against certain officials of the Bank of Cusseta to recover money alleged to have been lost on account of the negligence of the defendants. The defendants demurred to the petition upon both general and special grounds. The court adjudged "that said demurrers be sustained, and said petition of the plaintiff be dismissed," and the plaintiff excepted.

The petition by paragraph is substantially as follows: (1) Petitioner took charge of said bank in his official capacity on July 14, 1926. (2) At the time petitioner took over the affairs of the bank, its officers were C. C. Minter, president; O. C. Stephens, vice-president, and W. A. Gaylor, cashier; and said officers and E. M. Lightner and S. D. McMurrain constituted its directors; said Minter, Stephens and McMurrain having been members of the board of directors of said bank continuously for more than fifteen years before the closing thereof; and said Gaylor and Lightner having been members of said board continuously for more than seven years before the closing thereof. (3) "All of said directors are residents of Chattahoochee county, and all of said parties are named as defendants in this suit." (4) As directors and officers of said bank, defendants were charged with the administration of its affairs, the investment of its funds, including amounts deposited with it, and the protection of its depositors and stockholders, and it was their duty to give their personal attention to the trust committeed to them, and to use their best judgment and business ability in the handling of the affairs of said bank, and the investment of its funds so that the business might be safely conducted without loss to depositors and with profit to the stockholders of the bank. (5) "Said officers and directors as aforesaid grossly neglected the duties devolving upon them . . and so mismanaged and neglected the affairs of said bank as that it became insolvent and was forced to close its doors; by reason of which neglect and misconduct the depositors sustained large losses, investment of the

stockholders was swept away, and they became liable upon assessment of 100% on their stock for the benefit of the depositors." (6) "Defendants, acting as a board of directors, entered into a contract with Bankers Trust Company, a corporation having its place of business in Atlanta, Fulton county, Ga., by which said trust company was constituted the financial agent of said Bank of Cusseta, and the said defendants allowed said trust company to invest a very large proportion of its funds and to manage and control as it saw fit all of the business of said bank save its purely local affairs." (7) Said trust company undertook to place for said bank such funds as were not presently needed to care for the demand of the local customers of the bank, and, "as often as the bank had any accumulated funds on hand, sent to it commercial paper, which paper the defendants as officers and directors of said bank took and paid for without question." Such paper, amounting to $46,443.50, besides interest, was held by the Bank of Cusseta when it closed its doors. (8) Most of said paper "was that of corporations closely affiliated with the trust company and in which it or its officers were largely interested, in many instances being the only stockholders, and the paper of its officers and their close business associates." (9) "Any investigation on the part of defendants would have disclosed the fact that the trust company was directly or indirectly interested in the paper which it offered the bank, and . . that most of the corporations and individuals were insolvent or were not entitled to the amount of credit they were securing. An investigation would also have shown that few, if any, of the papers offered for discount were properly secured." (10) "Defendants made no investigation whatever of any of the paper offered to said bank by the Bankers Trust Company, but accepted the same when it was offered without investigation and without question." (11) "In almost every instance the paper held by the bank at the time it closed has been renewed from time to time. Almost all of it had been carried for a period of two years, and a large portion of it had been carried from four to fifteen years. In most instances no reductions or payments on account had been made." (12) "The fact that the paper had been renewed over such a long period of time was of itself sufficient to put the defendants on notice that the makers of the paper were not proper business risks, and any attention to the affairs of the bank would have required the de-

fendants to take appropriate steps for the collection of the paper, but said defendants continued through a long period of years to accept renewals every ninety days, and made no effort whatever to collect the paper, to have it better secured, or to require its reduction.

(13) "The paper which had been placed in the bank by the Bankers Trust Company which was held among its assets at the time it closed and upon which the bank sustained large losses was as follows: (a) Amortization Corporation, Atlanta, Ga., endorsed by Georgia Realty Company, $2,060. This loan was placed in the bank on November 1, 1922, and had been renewed eight times prior to the closing of the bank. The Amortization Corporation was organized by the officers of the Bankers Trust Company for the purpose of financing large losses which they had sustained in an automobile enterprise. The company at no time had any substantial assets, but did assume very heavy liabilities. Its officers were officers of Bankers Trust Company, and its business was conducted from the office of the Bankers Trust Company. It has been liquidated through a receivership in Fulton superior court, and no dividends whatever have been paid to general creditors. Georgia Realty Company, a real-estate corporation organized by the Bankers Trust Company, and the business of which was conducted from the office of that company. It was insolvent at the time this loan was placed in the bank and had been insolvent some time prior thereto. It has been adjudged a bankrupt and has paid its credtors 4%. Except for the small dividend paid by the Georgia Realty Company, this loan will be a total loss to the bank. (b) Bankers Investment Company, Jacksonville, Fla., secured by stock in Bankers Guaranty Company, Miami, Fla., $2,000. Both these corporations were subsidiaries of the Bankers Trust Company, through which it served Florida banks belonging to its chain, and financed its Florida operations and speculations. Both companies have been adjudged bankrupt. The liquidation of the Bankers Investment Company has been completed and creditors have been paid no dividend. The stock of the Bankers Guaranty Company of Miami is worthless. The loan was placed in the bank June 25, 1925, and was renewed three times. The loan will be a total loss to the bank. (c) Bankers Financing Company, Atlanta, Ga., secured by stock in sundry banks, $4,000. The stock of the Bankers

Financing Company was all owned by the Bankers Trust Company. It had no assets except the stock in certain banks belonging to the Bankers Trust Company chain, all of which was hypothecated. The company has been adjudged a bankrupt and no dividend has been paid to its creditors. The stocks securing this loan are worthless, except the ten shares of stock of the First National Bank of Amityville, N. Y., which has been sold, and litigation is pending in the courts of New York over the proceeds, and two shares of stock in the Bank of Irwinton. The other banks are all being liquidated through the superintendent of banks, and assessments of 100% have been levied on the stock by the superintendent. The loan was placed in the bank December 1, 1920, and was renewed sixteen times. The bank will sustain a loss of not less than $3,000 on this loan. (*d*) Bankers Trust Company, Atlanta, Ga., $4,000, secured by ten shares of stock of the Bank of Jennings, Jennings, Fla.; thirty shares of stock of Georgia State Bank, Atlanta, Ga. The Bankers Trust Company has been adjudged a bankrupt, and no dividend has been paid to creditors. The stock securing the loan is worthless; all of it was for the stock of banks which have closed, and upon which assessments have been made. The loan was placed in the bank on December 1, 1920, and was renewed nineteen times, and will be a total loss to the bank. (*e*) Farley & Heard, Miami, Fla., endorsed by Georgia Farm Loan Company, $2,040. Farley & Heard were real-estate operators in Miami who went out of business and became insolvent in 1925. The Georgia Farm Loan Company was a corporation organized by the Bankers Trust Company, and having the same officers, and its affairs were conducted from the office of the Bankers Trust Company. It has been insolvent for at least five years, and it has practically no assets. It has been adjudged a bankrupt and no dividends have been paid to creditors. The loan was placed in the bank May 17, 1926, and will be a complete loss to the bank. (*f*) Georgia Realty Company, Atlanta, Ga., guaranteed by Bankers Trust Company, $2,728.50. The Georgia Realty Company is the same corporation referred to in paragraph (*a*) hereof. The guarantee of the Bankers Trust Company is wholly worthless, as that company guaranteed commercial paper of more than three million dollars. This note was placed in the bank June 6, 1910, and has been renewed thirty-six times without any reduction in the principal. Except for the small dividend paid

by the Georga Realty Company, the loan will be a total loss to the bank. (*g*) Decatur Brick Corporation, Decatur, Ala., endorsed by John R. Morrison and H. T. Rawlins, $3,000. The Decatur Brick Corporation operated a brickyard at Decatur, Ala. P. J. Baker, treasurer of the Bankers Trust Company, was heavily interested and was a director of the corporation. It has been adjudged a bankrupt, and has paid its creditors 30%. Both indorsers of the note are insolvent. The note was first placed in the bank September 29,.1919. It has been renewed twenty-three times. Except for the 30% dividend the note will be a total loss to the bank. (*h*) Bankers Security Company, Atlanta, Ga., secured by note [of] Amortization Corporation, $2,040. The Bankers Security Company was a corporation organized by the Bankers Trust Company and conducted in its offices. It was insolvent at the time this loan was made, and has since been adjudged a bankrupt, and no dividend has been paid to creditors. The Amortization Corporation was referred to in paragraph (*a*) of this petition. Both the Bankers Security Company and the Amortization Corporation were insolvent at the time the loan was originally made. The loan was originally placed in the bank on August 10, 1923, and was renewed eight times. Said loan will be a total loss to the bank. (*i*) Clarendon Hotel Company, Seabreeze, Fla., secured by second mortgage on hotel, and endorsed by E. L. Kincaid and Bankers Guaranty Company of Miami, Fla., $2,550. The first mortgage of $222,000 on the Clarendon Hotel Company's property has been foreclosed and final judgment rendered. The second mortgage secures indebtedness of $50,600, which is long past due, and no payments have been made. E. L. Kincaid is the president of the hotel company, and is endorser on first mortgage, as well as on the second. Bankers Guaranty Company is the same corporation referred to in paragraph (*b*) hereof. It is guarantor on the first mortgage, as well as on the second, and has endorsed and guaranteed a very large amount of commercial paper. Whether or not this loan is of any value will depend on whether the hotel company's property can be sold for more than enough to pay the first mortgage. The loan was placed in the bank May 25, 1925, and was renewed four times. (*j*) E. B. Davis, Byromville, Ga., secured by five shares of stock [of] Bank of Byromville, $300. This note was discounted June 1, 1923, and has been renewed seven times. Diligent effort has been

made to collect the note since the closing of the bank, but so far all efforts have failed. (k) C. A. Hatcher, Columbus, Ga., $4,070, secured by stock in the Chero-Colo Company, Columbus, Ga. This loan was placed in the bank on July 14, 1924, and was renewed eight times without reduction. This is part of a loan amounting to $190,000. Some payments have been made by C. A. Hatcher since the bank closed. The amount of loss on this loan can not be estimated. (l) Liberty Cotton Mills, Dallas, Ga., secured by four $1,000 first-mortgage bonds on the property of the mills, $4,065. Liberty Cotton Mills failed and was reorganized by the Bankers Trust Company, the trust company owning all the stock of the reorganized cotton mills. The property against which the first-mortgage bonds were issued was appraised at less than 50% of the amount of the bonds. The mill has been adjudicated a bankrupt and has paid no dividend to creditors. The loan was placed in the bank on April 15, 1919, and was renewed fifteen times. This bank will sustain a loss of more than $2,000 on this loan. (m) Morningside Park Inc., Atlanta, Ga., guaranteed by Bankers Trust Company, $2,000. It owns a considerable body of land in Fulton county, largely undeveloped and of uncertain value. The corporation was organized by the officers of Bankers Trust Company and is in the hands of a receiver appointed by Fulton superior court. The note was placed in the bank on December 12, 1925, and was renewed three times. The bank will sustain a loss of at least 50% of the amount of the note. (n) Phoenix Building Company, Atlanta, Ga., secured by bonds on Atlanta city property, $3,070. Phoenix Building Company was a corporation organized by the Bankers Trust Company, the business of which was conducted in the office of the Bankers Trust Company. Had the defendants investigated they would have found that the property which purported to secure these bonds stood in the name of Georgia Realty Company, and that the deed of trust securing the said bonds had never been executed or recorded. Phoenix Building Company has been fully administered through a receiver in Fulton superior court and has paid a dividend of 31%. The loan was placed in the bank on December 29, 1921, and was renewed fourteen times. Except for the dividend of 31% the note will be a total loss to the bank. (o) Harry S. Kelsey, Miami, Fla., $1,020. Kelsey was a real-estate operator at West Palm Beach, Fla. This claim is a participation certificate issued by

the Bankers Trust Company in a loan of $75,000 made to Kelsey. The loan has been paid off, but the bank in Miami, Fla., which collected the amount has set off the amount collected against the indebtedness due it by the Bankers Trust Company. Suit is now pending in Florida for the recovery of the amount, but result of the suit is problematical. The loan was placed in the bank on February 10, 1926. (*p*) J. R. Smith, Atlanta, Ga., secured by notes of P. J. Baker, Atlanta, $2,000. Both J. R. Smith and P. J. Baker were trustees of Bankers Trust Company, Baker being also treasurer. J. R. Smith is now deceased and his estate is insolvent. P. J. Baker has been adjudged a bankrupt and has paid a dividend of only 1½%. This loan was placed in the bank on November 25, 1924, and was renewed seven times. With the exception of the small dividends paid by the bankrupt estate of P. J. Baker the loan will be a total loss. (*q*) J. R. Smith & Company, Atlanta, Ga., secured by twenty-five shares of stock of Morningside Park Inc. J. R. Smith & Company was a partnership composed of J. R. Smith and W. D. Manley. The partnership has no assets. J. R. Smith is the same party referred to in paragraph (*p*) hereof. W. D. Manley has been adjudged a bankrupt and no dividends have been paid to his creditors. The partnership had a policy of insurance on the life of J. R. Smith from which dividends of 28% have been paid to creditors. Except for these dividends the loan will be a total loss. The loan was placed in the bank on December 16, 1922, and was renewed eleven times. (*r*) Summit Nurseries, Monticello, Fla., endorsed by Miller Gissard, $3,000. Both principal and endorser are of doubtful solvency. The loan was placed in the bank on February 24, 1925, and was renewed four times. The bank will sustain a loss of $2,000, or other large sum, on this claim."

(14) "The Bank of Cusseta had a capital stock of $15,000, and claimed a surplus of $7,500, and 'could not lend over 10% of that amount' to any one person or corporation, unless the loan was secured and approved in writing by a majority of the board of directors. Each renewal note exceeding $1,500 was so approved by a majority of the directors, but said defendants were so negligent in the discharge of their duties that they approved these several loans, with the constantly recurring renewals, without making any investigation or inquiry, and without any regard to the solvency of the makers and endorsers of the security back of the notes." (15) "The

loans hereinbefore referred to were frequently in the form of participating certificates issued by the Bankers Trust Company, certifying that the bank was entitled to participate in the amount indicated in a much larger loan, the principal obligation and the collateral securing the same being held by the Bankers Trust Company. Defendants made no effort to ascertain whether in point of fact the trust company held the notes against which the securities purported to have been issued or the collateral securing the same. The trust company renewed these loans, substituted collaterals, and changed the form of the obligation whenever it saw fit, without consulting or asking for the approval of the bank or the defendants who were its officers and directors. Where notes were secured by collaterals, the common practice was for these collaterals to be retained by the trust company in its own possession, sometimes sending to the bank its trust receipt for the collaterals. These collaterals were renewed, extended, exchanged, substituted by the trust company whenever it saw fit, and so negligent were the defendants that they made no inquiry as to what was being done with the collateral securing a large part of the funds of the bank, with management of which they were charged." (16) "On account of the negligence of the defendants in discounting the notes hereinbefore referred to for the Bankers Trust Company, the bank and the depositors thereof will sustain a loss of $40,000, or other large sum."

(17) "Defendants also allowed the said trust company to lend other funds belonging to it to banks belonging to the Bankers Trust Company chain of banks on call, the Bankers Trust Company placing funds from time to time with such banks as it saw fit, the defendants having no voice in the placing of the funds or with their repayment. At the time the bank closed it had $11,500 so placed; $3,000 with the Bank of Omega, $2,000 with the Bank of Palmetto, Georgia; $1,000 with the Bank of Pineview, Pineview, Ga.; $3,000 with the Farmers State Bank, Temple, Ga.; $1,500 with the Georgia State Bank, Mansfield, Ga.; and $1,000 with the Georgia State Bank, Bronwood. All of the above banks have closed and very small dividends will be paid to their creditors. The Bank of Cusseta will sustain a loss of approximately $9,000 on account of these loans which the directors negligently allowed the Bankers Trust Company to make on account of said bank."

(18) "Said defendants negligently and wrongfully advertised

that the depositors of the bank were insured against loss, and they paid over to the Depositors Guarantee Fund, operated by the Bankers Trust Company, which they allowed to completely dominate the policy of the bank, the sum of $2,702.70, and each year, after this deposit was made, credited interest on the amount, so that at the time of the failure of the bank this fund showed a credit balance on its books of $3,656.05. In truth and in fact the fund had been lost or squandered by the trustees thereof, and if the defendants had made any inquiry they could have ascertained that the depositors were not insured, and that the fund which they were carrying as an asset on their books did not exist. By reason of the advertisement that deposits in the bank were insured, the defendants induced depositors to make deposits with said bank when they knew, or by the exercise of proper diligence should have known, that the advertisement was false and that the depositors were not in fact insured." (19) "Defendants purchased with the funds of the bank and carried as an asset thereof ten shares of stock of the Bankers Trust Company, paying therefor $1,500. Such stock was not a proper investment for the funds of the bank and the investment of the money of the depositors therein, and continuing to carry said stock as an asset of the bank was a breach of the duty which the defendants owed the bank and the depositors and stockholders thereof. An investigation of the condition of the Bankers Trust Company would have disclosed that the company was insolvent; but, in spite of its insolvency, defendants continued to carry the stock as an asset. The trust company has been adjudged a bankrupt, and the stock is a total loss. By reason of the negligence of the defendants, the bank, its depositors and stockholders, have sustained a loss on this item of $1,500." (20) "By reason of the misconduct and the gross neglect of the defendants, the bank, its depositors and stockholders, have sustained losses in the sum of $60,000 for which defendants are liable." 21. "Petitioner, as superintendent of banks in charge of the Bank of Cusseta, is charged with the duty of administering its affairs, collecting all amounts which may be due it, and distributing the same to depositors and other creditors according to the priorities fixed by law, and it is his duty as such superintendent to collect from the defendants the amount which has been lost by reason of their misconduct, breach of trust and neglect of duty." (22) "Petitioner shows that the lia-

bility of said bank to its depositors is the sum of $117,679.12; that out of the assets of the bank there have been paid all claims entitled to priority of payment, and a dividend of 40% to depositors; that the remaining assets will not be sufficient to pay more than an additional ten per cent. if, indeed, so much can be realized out of them. There will therefore be due the depositors after all the assets are exhausted more than the sum of $58,000." "Wherefore, petitioner prays judgment against said defendants and each of them in the sum of $60,000," and that process issue, etc.

The first thirteen grounds of the defendants' demurrer may be conveniently treated together. The substance of each of them follows by paragraph: (1) The petition is insufficient in law. (2) There is no right in the plaintiff to maintain the action. (3) No breach of duty by the defendants as directors is plainly, fully, and distinctly set forth. (4) The alleged acts of omission and commission of the defendants as directors are not shown to be the proximate cause of any actual loss to the depositors of the bank. (5) The petition is prematurely brought, in that the alleged acts of the defendants are not shown to be the proximate cause of any actual loss or damage sustained by the depositors of the bank. (6) The actual loss to the depositors at the time of the filing of said petition is vague, indefinite, uncertain, and unascertained. (7) The liquidation of the bank has not proceeded far enough to determine the actual loss to the depositors. (8) The amounts which will be realized for the depositors of said bank from its assets, other than the claims of the plaintiff against the defendants, are uncertain, vague, and indefinite. (9) The petition is duplicitous because it seeks to embrace in one count an action for a breach of the defendants' statutory duties as directors under the banking act approved August 16, 1919, and an action for a breach of the defendants' common-law duties as directors. (10) The petition is duplicitous because the plaintiff seeks to embrace in the same count in the same action the liabilities of all the defendants as directors, and the liabilities of C. C. Minter as president, O. C. Stephens as vice-president, and W. A. Gaylor as cashier. (11) The petition is duplicitous, vague, indefinite, and uncertain in that the plaintiff seeks to maintain an action against all of the defendants as a board of directors, and against certain of the defendants for their alleged acts as president, vice-president, and cashier. (12) The petition

is duplicitous in that the petitioner seeks to embrace in the same count of the same action an alleged right of action arising out of each of the transactions named in the subsection of paragraph 13 of the petition. (13) The petition is duplicitous because it seeks to embrace in one count common-law causes of action arising out of the eighteen separate transactions set out in paragraph 13 thereof, and another transaction for the breach of a statutory duty in paragraph 19 thereof, and still another transaction for the breach of a statutory duty in paragraph 14 thereof.

The petition abundantly sets out a cause of action, and if there had been any doubt as to this, such doubt would be completely dispelled by the ruling of the Supreme Court in the very similar case of *Shannon* v. *Mobley*, 166 *Ga.* 430 (143 S. E. 582). The petition is not duplicitous, and is not subject to any of the foregoing objections. Neither is paragraph 4 of the petition duplicitous, as alleged in paragraph 14 of the demurrer, because it embraces complaints against the defendants as directors and against some of them as officers of the bank.

The numerous attacks made on paragraph 4 of the petition, in paragraphs 15, 16, 17, and 18 of the demurrer, may be summarized as contending that the duties of the directors are overstated, and the diligence required of them made to exceed that which the law demands. "The general rule in this State is that directors of a bank must exercise ordinary care and diligence in the administration of its affairs." *Woodward* v. *Stewart*, 149 *Ga.* 620 (101 S. E. 749). The duties of bank directors are discussed at length in the case cited. In the case of *Shannon* v. *Mobley*, supra, Justice Gilbert, speaking for the court, says: "If the qualities of integrity, diligence and loyalty are required in any institution more than in others, it would seem to be in banking institutions." Under the authorities cited, paragraph 4 of the petition is not objectionable for any reason assigned in the demurrer.

Bearing in mind the nature of the case, the number of transactions involved, the patent fact that the entire action can not be set out in one or even a few paragraphs, paragraph 5 of the petition is not subject to any of the objections raised by paragraph 19 of the demurrer, these objections being mainly that the allegations of paragraph 5 are too general, and are opinions without sustaining facts.

Paragraph 20 of the demurrer complains that paragraph 6 of the petition states an erroneous conclusion of law in alleging that the directors were charged with the responsibility of "safely lending and investing" the bank's funds. Let this paragraph be so amended as to allege that directors were bound to use ordinary care and diligence in safely lending and investing the funds of the bank. We are further of the opinion that paragraph 6 of the petition should be so amended as to allege the date and the essential parts of the alleged contract between the board of directors of the Bank of Cusseta and Bankers Trust Company, in order to meet the 21st ground of the demurrer. The other grounds of the demurrer are not meritorious.

Grounds 22, 23, 24, 25, 26, and 27 of the demurrer to paragraphs 7, 8, 9, 10, 11, and 12, respectively, of the petition, for the most part attack these paragraphs of the petition for the alleged reason that they are vague, indefinite, and uncertain, are conclusions, and do not allege requisite facts. Considering these paragraphs in the light of the nature of the action and of the allegations in other paragraphs of the petition, these grounds of the demurrer are not good.

The demurrer raises approximately one hundred and fifty objections to the various subsections of paragraph 13 of the petition. Most of these objections may be summed up as follows: (1) There is not any statement as to when the particular loan was made, nor as to the value of the loan when it was made. (2) No allegation as to when the maker of the paper, or the security thereon, became insolvent. (3) No allegation of facts that would put the defendants upon notice that either the maker of the paper or the surety thereon was insolvent at the time the loan was made, or that the stocks or other security was worthless at such time, or at any time when the loan was renewed. (4) No statement as to when receiver was appointed, if one was appointed. No allegation of fact as to whether final dividend has been paid by insolvent maker or insolvent security, or as to when dividend alleged to have been paid was paid. (5) The particular claim is barred by the statute of limitations. (6) No allegation of actual loss to Bank of Cusseta. (7) The description and amount of stock securing the particular claim is not stated. (8) No statement as to what has been, or will be, realized from the security. (9) The allegation of loss

is not supported by the facts, or there is no definite statement at all of loss.

In order to avoid repetition, we now state that any transaction referred to in paragraph 13, or elsewhere in the petition, which does not affirmatively appear to be within the statute of limitations, is subject to demurrer, and will be stricken unless amendment curing such defect is made before the remittitur of this court is made the judgment of the trial court. If the original loan, or any renewal thereof, was made within four years from the time suit was filed, the particular claim is not barred by the statute. See *Shannon* v. *Mobley,* supra.

Subsection (*a*) of paragraph 13 of the petition should be amended so as to meet the 28th ground of the demurrer, to the effect that the claim is not shown to be within the statute of limitations. Otherwise this subsection is not subject to the demurrer. Subsection (*b*) is not subject to any ground of the demurrer. The loan referred to in subsection (*c*) was placed in the bank December 1, 1920, and was renewed sixteen times. It appears that the petition in this case was filed in office August 3, 1927. Therefore it appears that the claim is barred by the statute of limitations, and the demurrer is sustained in this regard, with the right in the plaintiff in error, however, to meet the objection by proper amendment before the remittitur of this court is made to the judgment of the trial court. The other grounds of the demurrer as to this subsection are not meritorious, and the judgment sustaining them is reversed. The loan referred to in subsection (*d*) is subject to the ground of the demurrer that it does not come within the statute of limitations. This item may be saved by appropriate and timely amendment. In other respects the court erred in sustaining the demurrer. The loan referred to in subsection (*e*) is not subject to the demurrer for any reason assigned. The demurrer as to subsection (*f*), in so far as it attacks the loan as not coming within the statute of limitations, is sustained, with the right to make timely and appropriate amendment. The court erred in sustaining the demurrer as to this subsection in other respects.

What was ruled in regard to subsection (*f*) in the next preceding paragraph applies to subsection (*g*). Subsection (*h*) is not subject to the demurrer, and the judgment holding that it was is overruled. The demurrer as to subsection (*i*), for the reason

that the value of the paper is uncertain and problematical, is good. If this defect can be cured by appropriate and timely amendment, this may be done. Otherwise the subsection must be stricken. The judgment sustaining the demurrer as to this subsection in other respects is overruled. Subsection $(j)$ is subject to the demurrer in that the facts alleged are insufficient to show any definite loss and no definite loss is alleged; also in that the claim is not shown to come within the statute of limitations; and in these respects the judgment sustaining the demurrer is sustained, with the right to make appropriate and timely amendment. In other respects the judgment sustaining the demurrer as to this subsection is error. Subsection $(k)$ is subject to the demurrer in that no facts are alleged to show what the amount of the loss is, and the judgment sustaining the demurrer in this respect is affirmed; in other respects it is overruled. Subsection $(l)$ is subject to the demurrer in that it does not appear that the loan comes within the statute of limitations. A timely and appropriate amendment may be made to remedy this defect. If this is not done, the item is stricken. In other respects the judgment sustaining the demurrer is overruled.

In view of the fact that the borrower is in the hands of a receiver and its property is of uncertain value, the allegation of "a loss of at least 50% of the amount of the note" is a conclusion not supported by facts; and the demurrer in this regard to subsection $(m)$ is good. Timely and appropriate amendment may be made; and if this is not done the item is stricken. In other respects the judgment sustaining the demurrer is reversed. Subsection $(n)$ does not bring the claim within the statute of limitations, and in this regard the demurrer is sustained, with the right to make timely and appropriate amendment. In other respects the demurrer as to this subsection is not good. Subsection $(o)$ is subject to the demurrer in that no facts are pleaded to show what the loss is, or what it is likely to be. In this regard the demurrer is sustained, with the right to make timely and proper amendment. In other respects the judgment sustaining the demurrer as to this subsection is reversed. Subsection $(p)$ was not subject to the demurrer, and the judgment sustaining the demurrer as to this subsection is error. Subsection $(q)$ is defective in these respects: The amount of the loan is not averred; the claim is not shown

to be within the statute of limitations; and the facts alleged do not warrant the conclusion that there will be a total loss; nor do the facts alleged indicate with sufficient certainty what the loss will be. In these respects only the judgment sustaining the demurrer as to this subsection is correct. In the absence of timely and appropriate amendment this subsection is stricken. The facts alleged in subsection (r) do not warrant the conclusion reached by the pleader that the bank "will sustain a loss of $2,000, or other large sum;" and in this regard the demurrer was good. In other respects the judgment sustaining the demurrer as to this subsection was error. This subsection is stricken unless appropriate and timely amendment be made.

Paragraph 46 of the demurrer, that "the allegations in paragraph 13, and in all the subparagraphs thereof, are vague, indefinite, and uncertain, and are insfficient in law to show that the defendants have not diligently and honestly administered the affairs of the Bank of Cusseta," is answered by the rulings above made as to the subsections of paragraph 13 of the petition. As stated, this ground of the demurrer is not good. Paragraphs 14, 15, and 16 of the petition are not subject to the demurrer. Paragraph 17 of the petition is subject to ground 50 of the demurrer, in that it fails to allege facts sufficient to show that the borrowers were not proper risks or that the loans referred to were negligently made, or to indicate when said loans were made. In other respects the demurrer was not good as to this paragraph and the judgment sustaining it was error. Paragraphs 18, 19, 20, and 21 are good as against the demurrer, and the same is true of paragraph 22 of the petition.

In the 55th and last ground of the demurrer it is urged that paragraphs 6 and 7 of the petition are insufficient in law, (a) because under section 2817 of the Civil Code (1910) Bankers Trust Company was empowered to act as the fiscal agent of the Bank of Cusseta; and (b) because under article 17 of the Banking Law of 1919, the Bank of Cusseta was authorized to appoint such agents as the business of the bank might require, prescribe their duties, and fix their compensation. This ground of the demurrer is not good.

The court erred in sustaining the general and certain of the special grounds of the demurrer. Whereupon it is ordered that

the case stand for trial upon the petition in so far as it is not subject to special demurrer and in so far as the defects indicated herein shall be cured by amendment.

*Judgment reversed, with direction. Broyles, C. J., and Bloodworth, J., concur.*