28951. TALLANT v. EXECUTIVE EQUITIES, INC. et al.

JORDAN, Justice.

This is an appeal from the granting of a motion for summary judgment in Fulton Superior Court.

In 1969 Fred C. Tallant Sr., appellant, conceived and promoted a business, which was incorporated as Executive Equities, Inc., for the purpose of owning and operating cemeteries and related enterprises. The articles of incorporation provide for Class A and Class B stock. Class A stock elects two directors while Class B stock elects three directors.

Initially, of the 2,000,000 Class B shares authorized, 100,000 were issued. Sixty thousand Class B shares were sold to appellant, while 40,000 Class B shares were sold to Tom Sanson, president of appellee corporation. By virtue of the ownership of said shares, appellant controlled the corporation through his ability to elect a majority of the directors.

Through successive intrastate registrations, ap-

pellee has outstanding some 2,800,000 shares of Class A stock, held by approximately 850 stockholders who have paid more than $1,600,000 for their stock.

The corporation registered for public sale Class A stock at $5 per share. On March 8, 1972, Sanson recommended terminating the Class A registration, and initiating a Class B registration. On that date, the Directors of Executive Equities, Inc., decided to issue the remaining 1,900,000 shares of Class B stock at $3 per share. On March 16, 1972, appellee notified appellant of his pre-emptive rights, which rights were to expire on April 17, 1972. The Class A registration was terminated by the Board of Directors on March 22, 1972. On April 14, 1972, Sanson purchased 21,000 Class B shares; appellant did not exercise his pre-emptive rights, although this opportunity was afforded him.

On April 19, 1972, appellant filed his complaint, asking essentially that the corporation be restrained and enjoined from offering the Class B shares.

A hearing was held where the supporting affidavits were considered. The pertinent portions of the affidavits showed the following:

The affidavit of Fred C. Tallant, Sr., showed that each prospectus published pursuant to stock registrations disclosed to purchasers that Tallant had the right to exercise shareholder control of the corporation. Tallant became concerned that the management was involved in corporate waste, and called a special shareholders meeting, the purpose of which was to vote on the removal of Class A and Class B directors. Tallant then received a letter reciting his pre-emptive rights and informing him that the Board of Directors of the Corporation had decided to cancel the Class A stock registration, and had authorized 1,900,000 shares of Class B stock at $3 per share. Tallant asserts in his affidavit that since a prior stock offering of 600,000 shares of Class A stock at $2 per share was sold in 101 days, the cancellation of the $5 issue of Class A stock and the initiation of the Class B offering at $3 amounts to corporate waste.

The affidavit of C. Tom Sanson, President of Executive Equities, Inc., states that the Board of

Directors of Executive Equities, Inc., determined that in the exercise of their best judgment, the best interest of the corporation and the best interest of the majority of its stockholders were not being served by the continued unilateral control of Fred Tallant, Sr. Sanson added that it was his purpose to give Tallant an option to maintain his control by the exercise of his pre-emptive rights; or if he failed to exercise those rights, to accord to all stockholders an equal right to exercise their vote and control in accordance with their ownership.

Sanson states in a later affidavit, that at the time of the decision to issue the additional Class B stock, the corporation was obligated to pay in excess of $200,000 a year on its long term notes, and that the $5 Class A stock issue had only sold 3,950 shares since its registration. Therefore, the issuance of additional stock was for the purpose of relieving the substantial interest burden on the corporation. In yet a later affidavit Sanson emphasizes the insufficient cash flow position of the corporation, and states: "In the light of these financial realities, I realized and the board of directors realized in March, 1972, that unless the corporation could raise additional capital within a relatively short period of time, the corporation was facing the certainty of a foreclosure by the bank on all of its properties."

The depositions of Directors Sanson, Carter and Dunwoody show that another reason for issuing the Class B shares was to broaden the shareholder base in the corporation, the effect of which would be to change the control of the corporation.

Appellant contended that the issuance of the Class B shares was void, and that said issuance was not for a corporate purpose but solely for the benefit of the board of directors who desired to perpetuate themselves in office.

Both parties made motions for summary judgment. The trial court heard the evidence by affidavit and granted appellee's motion for summary judgment and denied appellant's motion for summary judgment. *Held:*

In our view of the case, a valid corporate purpose was attempted to be served by issuing Class B shares. The fact that such issuance also would have the effect of removing

Fred Tallant, Sr., from control, *if he voluntarily chose not to exercise his pre-emptive rights,* is not material to our decision without some firm evidence that the transaction was fraudulent.

We have carefully reviewed the cases, both of this and foreign jurisdictions, upon which appellant has relied. Those cases are not factually relevant to the present case. Those cases involve secret meetings, minority shareholder squeeze-outs, and questions as to whether the specific complaints state a claim upon which relief can be granted.

In the present case, the corporation originally had 2,000,000 authorized shares of Class B stock. Initially, 100,000 were issued. In consonance with the charter and bylaws, the board of directors unanimously decided to issue the remaining 1,900,000 shares of Class B stock. There is no evidence that there has been a violation of any statute, resolutions, by-law or charter provision. Appellant's only allegation was that said issue was not for a corporate purpose, but merely for the personal advantage of the directors. Appellee presented evidence to show two corporate purposes for the issue: to raise much needed capital, and to effect a broader base of shareholders in the corporation. Appellant presented no evidence to counter these alleged corporate purposes. Code Ann. § 22-701 (a) provides: "Subject to the provisions of the articles of incorporation, the bylaws or agreements between the shareholders otherwise lawful, the business and affairs of a corporation shall be managed by a board of directors."

"No principle of law is more firmly fixed in our jurisprudence than the one which declares that the courts will not interfere in matters involving merely the judgment of the majority in exercising control over corporate affairs." *Regenstein v. J. Regenstein Co.,* 213 Ga. 157 (97 SE2d 693), and cits.

Under the facts of this case the trial court did not err in granting the appellee's motion for summary judgment.

*Judgment affirmed. All the Justices concur.*

ARGUED JUNE 11, 1974 — DECIDED SEPTEMBER 24, 1974.

*Candler, Cox, Andrews & Hanson, E. Lewis Hanson,* for appellant.

*Hatcher, Meyerson, Oxford & Irvin, Henry M. Hatcher, Jr.,* for appellees.