295 Ga. 579
FINAL COPY

S14Q0454. FEDERAL DEPOSIT INSURANCE CORPORATION v.
LOUDERMILK et al.

BLACKWELL, Justice.

As the receiver of the Buckhead Community Bank, the Federal Deposit Insurance Corporation sued nine former officers and directors of the bank,[1] alleging that they were negligent with respect to the making of loans, which led the bank, the FDIC says, to sustain nearly $22 million in losses. The defendants moved to dismiss the lawsuit, arguing that the business judgment rule relieves officers and directors of any liability for ordinary negligence. The FDIC responded that such a business judgment rule is no part of the common law in Georgia, and even if it were, it does not apply to *bank* officers and directors, insofar as the statutory law in Georgia explicitly requires bank officers and directors to exercise ordinary diligence and care. Unable to "discern clear and controlling precedent from the Supreme Court of Georgia," the United States

---

[1] These former officers and directors are R. Charles Loudermilk, Sr., Hugh C. Aldredge, David B. Allman, Marvin Cosgray, Louis J. Douglass III, Gregory W. Holden, John D. Margeson, Larry P. Martindale, and Darryl L. Overall.

District Court for the Northern District of Georgia certified the following question to us:

> Does the business judgment rule in Georgia preclude as a matter of law a claim for ordinary negligence against the officers and directors of a bank in a lawsuit brought by the FDIC as receiver for the bank?

With an important qualification, we answer this question in the negative.

1. To begin, we consider whether the business judgment rule is even a part of the common law in Georgia. The business judgment rule is a fixture in American law, and it is a settled part of the common law in many of our sister states. See S. Samuel Arsht, "The Business Judgment Rule Revisited," 8 Hofstra L. Rev. 93, 97-100 (1979). But defining the rule is "no easy task," Franklin A. Gevurtz, "The Business Judgment Rule: Meaningless Verbiage or Misguided Notion?," 67 S. Cal. L. Rev. 287, 289 (1994), insofar as the particulars of the rule may vary a bit from one jurisdiction to another. See Arsht, supra at 100-110. Nevertheless, we find a classic statement of the rule in Casey v. Woodruff, 49 NYS2d 625 (N.Y. Sup. 1944):

> Mistakes in the exercise of honest business judgment do not subject the directors to liability for negligence in the discharge of their fiduciary duties. . . . The directors are entrusted with the management of the affairs of the [corporation]. If in the course of

2

management they arrive at a decision for which there is a reasonable basis, and they act in good faith, as the result of their independent judgment, and uninfluenced by any consideration other than what they honestly believe to be for the best interests of the [corporation], it is not the function of the court to say that it would have acted differently and to charge the directors for any loss or expenditures incurred.

Prescience is always desirable, but failure to foresee what at best is uncertain does not give rise to liability. The law recognizes that no director is infallible and that he will make mistakes, but if he is honest and uses reasonable diligence, he will be absolved from liability although his opinion may turn out to have been mistaken and his judgment faulty. . . .

The question is frequently asked, how does the operation of the so-called business judgment rule tie in with the concept of negligence? There is no conflict between the two. When courts say that they will not interfere in matters of business judgment, it is presupposed that judgment — reasonable diligence — has in fact been exercised. A d[i]rector cannot close his eyes to what is going on about him in the conduct of the business of the corporation and have it said that he is exercising business judgment. Courts have properly decided to give directors a wide latitude in the management of the affairs of a corporation provided always that judgment, and that means an honest, unbiased judgment, is reasonabl[y] exercised by them.

Applying the foregoing tests I find no negligence on the part of the directors in this case. They may have been mistaken; they may have erred, but they did not act blindly, recklessly, or heedlessly. They studied the financial problems of the [corporation]. They were diligent in attending to their duties. These directors fully recognized their responsibilities as agents and fiduciaries; they did not act as mere dummies or figureheads.

49 NYS2d at 642-644 (citations omitted).

As the rule pertains to the liability of officers and directors for money damages, it distinguishes between the merits of their business decisions, on the one hand, and the basis of those decisions, on the other. If an officer or director has honestly exercised "judgment" with respect to a business matter — that is, if her decision was made in a deliberative way, was reasonably informed by due diligence, and was made in good faith — the wisdom of the judgment cannot ordinarily be questioned in court. See Auerbach v. Bennett, 47 NY2d 619, 629 (N.Y. 1979). See also In re Munford, Inc., 98 F3d 604, 611 (B) (11th Cir. 1996) ("The business judgment rule protects directors and officers from liability when they make good faith business decisions in an informed and deliberate manner." (citation omitted)). But whether a business decision was, in fact, a product of deliberation, reasonably informed by due diligence, and made in good faith are matters that may properly be questioned.[2] See Casey, 49 NYS2d at 643-644

_____

[2] Some courts have framed the business judgment rule as a "presumption that in making a business decision[,] the directors of a corporation acted on an informed basis, in good faith[,] and in the honest belief that the action taken was in the best interests of the company." Cottle v. Storer Communication, Inc., 849 F2d 570, 575 (II) (11th Cir. 1988). We do not quarrel with this alternative statement of the rule, insofar as the presumption can be rebutted by affirmative proof, and the presumption merely reflects that those seeking to challenge a business decision bear the burden of proving that it was made without good faith, due diligence, or deliberation.

4

("[The directors] may have erred, but they did not act blindly, recklessly, or heedlessly. They studied the financial problems of the [corporation]. They were diligent in attending to their duties . . . . [T]hey did not act as mere dummies or figureheads . . . ."). So understood, the rule reflects the principle that managing the affairs of a corporation is a matter committed by law to the discretion of the directors, the reality that the making of profits involves the taking of some risks, and the recognition that businesspeople generally are more competent than judges to exercise business judgment. See Janssen v. Best & Flanagan, 662 NW2d 876, 882 (I) (A) (Minn. 2003) (citing Auerbach, 47 NY2d at 619).

Although this Court never has spoken of the "business judgment rule" in so many words, we find an implicit acknowledgment of the rule in a number of our decisions. At common law, corporate officers and directors in Georgia owed a duty to exercise ordinary care. See McEwen v. Kelly, 140 Ga. 720, 723 (1) (79 SE 777) (1913) ("[T]hose who accept the position of directors impliedly undertake to exercise ordinary care and diligence in discharge of the duties thus committed to them."). The same was true of bank officers and directors. See Woodward v. Stewart, 149 Ga. 620, 628 (101 SE 749) (1919) ("[T]he general rule in this State is that directors of a bank must exercise ordinary care and

5

diligence in the administration of the affairs of the bank . . . .”). But in several cases in which business decisions by officers and directors were alleged to be negligent, this Court distinguished between claims of *unreasoned and uninformed* decisions and claims of *unreasonable* decisions. That is, we distinguished between cases in which a business decision was assailed for the way in which it was made — that the decision amounted to unthinking acquiescence, for instance, or was made without reasonable diligence to ascertain the relevant facts — and those in which the merit alone of the decision was disputed.

Three of our decisions at common law are, we think, especially instructive. First, in McEwen, the bankruptcy trustee of the Southern Iron Company sued the three directors of the corporation, alleging that one director had misappropriated corporate assets, and asserting that the other two were negligent when they elected the first as the corporate treasurer and when they failed to discharge him sooner. On appeal from the dismissal of the lawsuit, we explained that, “[w]hile [officers and directors] are not held responsible for *ordinary mistakes or errors of judgment,* they are liable for losses and waste of money and property occurring from *neglect or inattention to the business.*” 140

Ga. at 723 (1) (citation and punctuation omitted; emphasis supplied). We then observed a distinction between cases involving the mere "exercise of discretion by directors" — which, we supposed, might form a basis for liability if "gross[ly] or flagrant[ly] abuse[d]" — and cases in which "directors . . . [act] as figureheads and dummies[,] . . . allowing the corporation to be looted while they sat negligently by and looked wise." Id. at 723-724 (1). Ultimately, we reversed the dismissal of the lawsuit as to the director charged with willful misappropriation, but we sustained the dismissal as to the other two directors, noting that these directors had made inquiry about the misappropriated funds, that they had made some efforts to recover those funds, and that there was no evidence that any additional diligence on the part of these directors would have uncovered the misappropriation sooner. Id. at 725-726 (4). To conclude, we said:

> [T]here is no complaint that their efforts were not diligent, though in part unavailing. . . . In its last analysis, the effort to hold Totten and Satterfield liable rests on alleged negligence in the election of Kelly to the position of secretary and treasurer, and the failure to discharge him sooner. The petition is not lacking in adjective characterizations of the conduct of these two defendants; but under the vague, general allegations, we do not think that it makes out a case of breach of duty on their part . . . .

7

Id. at 726 (4).

Next, in Shannon v. Mobley, 166 Ga. 430 (143 SE 582) (1928), the state superintendent of banks had taken over the affairs of the failed Twiggs County Bank, and he sued its officers and directors for negligent mismanagement. According to his petition, the officers and directors had turned over the investments of the bank to the Bankers Trust Company, which then invested the deposits of the bank in commercial paper that was unsecured and not worth what the bank had paid for it. Among other things, the superintendent alleged that the officers and directors "accepted and paid for [the commercial papers] without question" and "without proper investigation," and he alleged as well that they were "on notice that [the commercial paper] was of questionable character, yet no investigations were made . . . ." 166 Ga. at 432. Concluding that the petition stated a claim against the officers and directors, we pointed to our statement in McEwen about "directors . . . acting as figureheads and dummies." Id. at 436 (citing McEwen). We noted as well that "[a] director of a bank has duties to perform more essential than that of allowing his name to be printed on the bank's stationery; and negligent ignorance is sometimes equivalent to knowledge." Id. (citation and punctuation omitted).

8

Last, in <u>Mobley v. Russell</u>, 174 Ga. 843 (164 SE 190) (1932), this Court again dealt with investments for a bank by the Bankers Trust Company. In <u>Russell</u>, the superintendent of banks had sued the officers and directors of the Taylor County Bank, making allegations like those in <u>Shannon</u>. See 174 Ga. at 844-845. The case had been tried by a jury, which returned a verdict for the officers and directors. The superintendent appealed, and we affirmed. About the correctness of the jury charges, we found no error, explaining:

> The mere exercise by directors of *poor judgment* in making loans is not sufficient to form a basis of liability; for the directors merely assume the obligations to manage the affairs of the institution with *diligence* and good faith.

Id. at 847-848 (6) (a) (citations omitted; emphasis supplied).

Although our decisions at common law speak in terms of a general duty on the part of officers and directors to exercise ordinary diligence and care, they do so mostly with respect to the way in which business decisions are made, not the wisdom of the decisions. The cases suggest that, if the only dispute is about the wisdom of a business judgment — what this Court in <u>McEwen</u> called an "exercise of discretion" — the law at least would require something more than a mere want of ordinary care to establish liability, if the merit of the judgment

9

could be questioned at all. See McEwen, 140 Ga. at 723-724 (suggesting, without deciding, that liability might arise from "exercise of discretion" for "its gross or flagrant abuse"). But whether a business decision was, in fact, an exercise of "judgment" — whether it was a product of deliberation, reasonably informed by due diligence, and made in good faith — is open to judicial scrutiny. See, e.g., Collier v. Mayflower Apartments, Inc., 196 Ga. 419, 426 (26 SE2d 731) (1943); Shannon, 166 Ga. at 432-433. In this sense, our decisions at common law about the liability of officers and directors for money damages implicitly acknowledge the business judgment rule.[3]

---

[3] Although it concerned alleged self-dealing by directors and a want of good faith, not mere negligence, our decision in Collier, 196 Ga. 419,, also is consistent with the business judgment rule and warrants some discussion. In Collier, we addressed the viability of a suit by a minority shareholder against four corporate directors to recover damages for the corporation. The minority shareholder asserted that the directors had mismanaged the corporation by settling a debt owed to the corporation for "a considerably less sum than the debt." 196 Ga. at 425. Concluding that the allegations stated a viable claim against the directors, we noted that the directors had offered no reasoned basis for their decision, for instance, that the debtor might be "insolvent, or of doubtful solvency" or "that it would not be [in] the best interest of [the corporation] to collect [the full amount of the debt]." Id. The absence of a reasoned basis for the decision, we said, suggested a lack of good faith, observing that the decision to forego full collection of the debt allegedly benefitted one director personally. See id. at 425-426. We added, however, that

> [i]f the fact be that the directors did not in fact arbitrarily and wantonly give away a substantial asset of [the corporation], but on the contrary settled this indebtedness in good faith, in the exercise of their judgment and discretion and for what they believed to be for the best interest of [the corporation], all things considered,

the directors would avoid liability as a result. Id. at 426. But because the exercise of such

10

So understood, we note that the business judgment rule is consistent with another line of our precedents, a line of equity cases that do not speak directly to the liability of officers and directors for money damages in suits at law, but nevertheless reflect a strong judicial reluctance to question the business judgments of businesspeople. See, e.g., Tallant v. Exec. Equities, Inc., 232 Ga. 807, 810 (209 SE2d 159) (1974); Regenstein v. J. Regenstein Co., 213 Ga. 157, 159-160 (97 SE2d 693) (1957); Malone v. Armor Insulating Co., 191 Ga. 146, 150 (12 SE2d 299) (1940); Smith v. Albright-England Co., 171 Ga. 544, 545 (156 SE 313) (1930). More than a hundred years ago, this Court explained in one such case — a case in which a minority shareholder of a lumber company sought by equity to compel management to resume the sawing of certain logs — that "[n]o principle of law is more firmly fixed in our jurisprudence than the one which declares that the courts will not interfere in matters involving *merely* the judgment of [management] in exercising control over corporate affairs." Bartow Lumber Co. v. Enwright, 131 Ga. 329, 333-334 (62 SE 233) (1908) (emphasis supplied). In refusing such equitable relief, we observed:

judgment was not shown by the pleadings, the suit could not be dismissed on a demurrer. See id.

11

The course adopted by [management], as shown by the evidence, was after a due investigation and consideration of the situation, and an inspection of the logs on hand and the making of estimates as to the cost of converting them into lumber and the price which could then be obtained for such lumber, had convinced [management] that the company as a corporation and themselves as stockholders would sustain financial loss should they attempt for the time being to operate the plant. . . . The mere fact that the court may differ with the majority of the corporation as to the wisdom of the course which their judgment directs will not justify [equitable] interference. . . . [T]he evidence clearly presents a case in which the question of advisability of operating the plant was one solely to be determined by an exercise of judgment, and the decision of this question was the rightful prerogative of [management] in control of the affairs of the corporation.

Id. at 335-336. Although these equity cases do not directly concern the liability of officers and directors for money damages in suits at law, they nevertheless offer some additional support for the idea that the business judgment rule fits comfortably in our common law.[4]

From our precedents, we conclude that the business judgment rule is a settled part of our common law in Georgia, and it generally precludes claims

---

[4] In several of the early judicial decisions recognizing that officers and directors owe a duty of ordinary care, we relied on analogies to trustees. See, e.g., Woodward, 149 Ga. at 628; McEwen, 140 Ga. at 722-723 (1). The law of trust is, of course, largely equitable. See Fine v. Saul, 183 Ga. 309, 312 (2) (188 SE 439) (1936) ("Trusts of every kind, not generally cognizable at law, are peculiar subjects of equity jurisdiction."). Accordingly, equity cases properly inform our analysis, even if they are not dispositive in the context of a suit at law for money damages.

against officers and directors for their business decisions that sound in ordinary negligence, except to the extent that those decisions are shown to have been made without deliberation, without the requisite diligence to ascertain and assess the facts and circumstances upon which the decisions are based, or in bad faith. Put another way, the business judgment rule at common law forecloses claims against officers and directors that sound in ordinary negligence when the alleged negligence concerns only the wisdom of their judgment, but it does not absolutely foreclose such claims to the extent that a business decision did not involve "judgment" because it was made in a way that did not comport with the duty to exercise good faith and ordinary care. We note as well that the business judgment rule applies equally at common law to corporate officers and directors generally and to bank officers and directors. Having concluded that such a business judgment rule is a part of our common law, we must consider whether the General Assembly has modified or abrogated the business judgment rule by statute. But before we turn to the statutes concerning the obligations and liabilities of bank officers and directors, we must consider one other contention of the defendants.

13

Citing two decisions of our Court of Appeals, the defendants urge this Court to recognize a different sort of business judgment rule. In Flexible Products Co. v. Ervast, 284 Ga. App. 178 (643 SE2d 560) (2007), the Court of Appeals said that the rule "forecloses liability in officers and directors for ordinary negligence in discharging their duties," 284 Ga. App. at 182 (2) (b) (ii), and a few years later, in Brock Built, LLC v. Blake, 300 Ga. App. 816 (686 SE2d 425) (2009), it reasoned that "allegations amounting to mere negligence, carelessness, or lackadaisical performance are insufficient as a matter of law [to overcome the business judgment rule]."[5] 300 Ga. App. at 822 (3). According to the defendants, these decisions show that the business judgment rule does not just preclude *some* claims that sound in ordinary negligence, but it precludes *all* such claims, without regard to the nature of the claim. To the extent that Flexible Products and Brock Built recognize an absolute bar against *all* claims premised on a want of ordinary care — even claims premised on allegations that a

---

[5] The Court of Appeals also said in Brock Built that the business judgment rule protects officers and directors from liability "when they make good faith decisions *in an informed and deliberate manner*." 300 Ga. App. at 822 (3) (citations and punctuation omitted; emphasis supplied). This statement of the rule — unlike the subsequent statement that "allegations amounting to mere negligence" never can be enough to overcome the rule — is consistent with the rule acknowledged at common law in our earlier cases.

14

business decision was uninformed or unreasoned — such a rule finds no support in our common law, which, as we have explained, reflects a more modest business judgment rule. Nevertheless, as we consider the implications of the pertinent statutory law, we will consider the extent to which Flexible Products and Brock Built might find support in the statutes.[6]

2. Our examination of the statutory law starts with OCGA § 7-1-490 (a), which concerns the care with which bank officers and directors are to perform their duties:

> Directors and officers of a bank or trust company shall discharge the duties of their respective positions in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like positions. In discharging his duties, a director or officer, when acting in good faith, shall be entitled to rely upon information, opinions, reports,

---

[6] In Flexible Products, the Court of Appeals cited two sections of the Corporation Code as the sole support for its understanding of the business judgment rule. 284 Ga. App. at 182 (2) (b) (ii) (citing OCGA §§ 14-2-830 and 14-2-842). In Brock Built, the Court of Appeals relied on Flexible Products, as well as two federal cases, 300 Ga. App. at 822 (3), although neither of the federal cases really supports the idea that the business judgment rule in Georgia precludes all claims that sound in ordinary negligence. See Munford, 98 F3d at 611 (B) (providing only that "[t]he business judgment rule [in Georgia] protects directors and officers from liability when they make good faith business decisions in an informed and deliberate manner"); Medserv Corp. v. Nemnom, 1997 U. S. Dist. LEXIS 18246, *9-10 (II) (N.D. Ga. 1997) (citing Mansfield Hardwood Lumber Co. v. Johnson, 268 F2d 317 (5th Cir. 1959), a case involving Louisiana law). If the rule articulated in Flexible Products and Brock Built is right, it can only be because the statutes require or suggest that rule.

15

or statements, including financial statements and other financial data, in each case prepared or presented by:

(1) One or more officers or employees of the bank or trust company whom the director or officer reasonably believes to be reliable and competent in the matters presented;

(2) Counsel, public accountants, or other persons as to matters which the director or officer reasonably believes to be within such person's professional or expert competence; or

(3) A committee of the board upon which the director or officer does not serve, duly designated in accordance with a provision of the articles of incorporation or the bylaws, as to matters within that committee's designated authority, which committee the director or officer reasonably believes to merit confidence;

but such director or officer shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted. A director or officer who so performs his duties shall have no liability by reason of being or having been a director or officer of the bank or trust company.

OCGA § 7-1-490 (a). Pointing to the first and last sentences of subsection (a), the FDIC urges that subsection (a) supersedes the business judgment rule at common law. In this respect, the FDIC reasons that, if "[a] director or officer who so performs his duties" — that is, one who performs his duties "in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like positions" — "shall have no

16

liability," then an officer or director who fails to "so perform[ ] his duties" necessarily must have liability. As we understand it, the FDIC essentially argues that the business judgment rule has no application at all to bankers, and if a bank officer or director fails to exercise ordinary care, he is liable, period. The defendants contend, on the other hand, that subsection (a) sets out a duty to act in good faith and to exercise ordinary care, and it creates a safe harbor from liability for officers and directors that do so, but that does not mean that officers and directors otherwise always must be liable. After all, the defendants note, it would have been easy enough for the General Assembly to provide explicitly that "[a] director or officer who [fails to] so perform[ ] his duties shall have . . . liability," but the General Assembly did not do so. Accordingly, the defendants argue, subsection (a) does not supersede the business judgment rule.

"When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." Deal v. Coleman, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). To that end, "we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." Id. (citations and punctuation omitted). And although the statutory arguments in

17

this case are chiefly about OCGA § 7-1-490 (a), we must take care not to limit our consideration to the words of subsection (a) alone. As we recently explained:

> In our search for the meaning of a particular statutory provision, we look not only to the words of that provision, but we consider its legal context as well. After all, context is a primary determinant of meaning. For context, we may look to the other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question.

May v. State, 295 Ga. 388, 391-392 (___ SE2d ___) (2014) (citations and punctuation omitted). Considering the words of subsection (a), as well as their legal context, we conclude — for the reasons described below — that the statute does not supersede the business judgment rule at common law, as the rule was acknowledged in the early decisions of this Court. We conclude as well, however, that subsection (a) is inconsistent with the different sort of rule described by the Court of Appeals in Flexible Products and Brock Built.

To begin, we note that the general standard of care described in the first sentence of OCGA § 7-1-490 (a) does not appear to differ in any meaningful way from the standard adopted at common law in Georgia, see Woodward, 149 Ga. at 628, and as we have explained, the standard at common law was

18

concerned with the way in which business decisions were made — not their wisdom — and in any event, it fit comfortably with the business judgment rule. The legal context of the provisions in subsection (a) about the standard of care and liability suggests strongly that these provisions should be understood consistent with the common law. In the first place, the structure of subsection (a) as a whole reveals that the statute is largely addressed to the process by which an officer or director is to become informed about the matters as to which he is to exercise judgment. Indeed, the general standard of care is followed immediately in subsection (a) by provisions about the information upon which a bank officer or director may properly rely, provisions that, in turn, are followed immediately by the provision about liability. See OCGA § 7-1-490 (a). Besides the structure of subsection (a), we note that another provision of the Banking Code provides that an "underlying objective" of the whole Code — including OCGA § 7-1-490 (a) — is to allow "[o]pportunity for management of

19

financial institutions to exercise their business judgment."[7] OCGA § 7-1-3 (a) (8).

Most important, however, is the statutory pedigree of OCGA § 7-1-490 (a), which shows that the statute was meant to retain the common law. The general statutory standard of care was adopted in 1974, as a part of the enactment of an entirely new Banking Code. See Ga. L. 1974, p. 705, § 1. The words by which the General Assembly in 1974 described the statutory standard of care for bank officers and directors — the same words by which the standard still is described today — were taken verbatim from Section 713 of the Georgia Business Corporation Code of 1968. Compare Ga. L. 1974, p. 705, § 1 (Ga. Code of 1933, § 41A-2211) with Ga. L. 1968, p. 565, § 1 (Ga. Code of 1933, § 22-713). And unlike most of the Business Corporation Code of 1968 — which was principally drawn from an early version of the Model Business Corporation Act — the standard in Section 713 notably was borrowed from New York

---

[7] Notably, the phrase "business judgment" is not one that appears frequently in the statutes. Indeed, we have found only one other Georgia statute that speaks of "business judgment," providing that the board of the Georgia Life and Health Insurance Guaranty Association "may exercise reasonable business judgment to determine the means by which the association is to provide [certain benefits] in an economical and efficient manner." OCGA § 33-38-7 (a) (20).

Business Corporation Law § 717, with the apparent understanding that New York law and the early decisions of this Court were consistent about the duties of officers and directors. Contemporaneous commentary on the Business Corporation Code of 1968 indicates that the words borrowed from the New York statute were meant to "embod[y] the same standard that the Georgia Supreme Court long has applied."[8] See Ga. Code of 1933, § 22-713 (1977) (comment) (citing McEwen and Woodward). By the time the General Assembly borrowed the same words again for the new Banking Code, of course, the business judgment rule was settled in New York, where it was understood to coexist with the statutory standard of ordinary care. See, e.g., Auerbach, 47 NY2d at 629-631; Heimann v. American Express Co., 279 NYS2d 867, 881 (N.Y. Sup. 1967) ("[T]he well-established business judgment rule applies to

---

[8] Commentary about the Business Corporation Code of 1968 was prepared by the State Bar of Georgia and published alongside the Business Corporation Code. That commentary would have been available to the General Assembly and the public alike in 1974, when the words of Section 713 were copied into the new Banking Code, and it, therefore, informs the original public meaning of the words used in the Banking Code. According to that commentary,

> [t]he first sentence of [Section 713] . . . is based upon N.Y. Bus. Corp. Law Section 717, and represents the weight of judicial authority. . . . Essentially, this provision embodies the same standard that the Georgia Supreme Court long has applied. See McEwen v. Kelly, 140 Ga. 720 (79 SE 777) (1913); Woodward v. Stewart, 149 Ga. 620 (101 SE 749) (1920).

Code of 1933, § 22-713 (1977) (comment).

insulate acts of directors in connection with the internal management of a corporation against interference by the courts."); Casey, 49 NYS2d at 642-644. In addition to the standard of care, the 1974 version of the Banking Code identified information upon which an officer or director could rely, although the information was identified more narrowly than in the current version of the statute.[9] See Ga. L. 1974, p. 705, § 1. The 1974 statute said nothing explicitly about liability, but insofar as it adopted the standard of care at common law, it impliedly allowed claims against officers and directors for a want of ordinary care in the process by which they made a business decision, see, e.g., Shannon, 166 Ga. at 432-433, 436, but not as to the wisdom of the judgment itself.

The current statutory provisions about liability and the information upon which an officer or director may rely were added to OCGA § 7-1-490 (a) a few years later. See Ga. L. 1977, p. 730, § 7. It is notable, we think, that these provisions were added to the statute at once, a circumstance consistent with our

---

[9] The 1974 statute provided that a bank officer or director properly might rely upon financial information concerning the bank or trust company represented to them to be correct by the president or the officer of the bank or trust company having charge of its books of account, or stated in a written report by an independent or certified public accountant or firm of such accountants fairly to reflect the condition of such institution.
Ga. L. 1974, p. 705, § 1 (Ga. Code of 1933, § 41A-2211).

22

view that the statutory reference to liability is chiefly about the way in which a business decision is made, not the merit of that decision. Indeed, the preamble of the 1977 amendment says nothing about any liability of officers or directors, as one would expect if the amendment were meant to do away with the business judgment rule at common law and thereby subject officers and directors to more potential liabilities. To the contrary, the preamble says only that the amendment was intended to "confirm and clarify the current right of directors to rely upon information, opinions, reports or statements regularly furnished them by others." Id. (preamble).

In the light of this statutory history, we conclude that OCGA § 7-1-490 (a) is perfectly consistent with the business judgment rule acknowledged at common law in the decisions of this Court. To be sure, subsection (a) provides that an officer or director who acts "in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like positions" "shall have no liability by reason of being or having been a director or officer of the bank or trust company." OCGA § 7-1-490 (a). And no doubt, these provisions imply strongly that, if an officer or director *fails* to act in good faith or with such ordinary care, he is subject to

liability. But taken in its legal context, the statutory reference to ordinary "diligence, care, and skill" is most reasonably understood to refer to the care required with respect to the process by which a decision is made, most notably the diligence due to ascertain the relevant facts. So understood, the implication of liability means only that an officer or director who acts in bad faith or fails to exercise such ordinary care with respect to the process for making a decision is liable.

This understanding of the statute comports with the principle that, "to the extent that statutory text can be as reasonably understood to conform to the common law as to depart from it, the courts usually presume that the legislature meant to adhere to the common law." May, 295 Ga. at 397. It also is consistent with the understanding of the New York Court of Appeals, which has characterized N.Y. Bus. Corp. Law § 717 (a) — the current version of which is substantially similar to the current version of OCGA § 7-1-490 (a)[10] — as a

---

[10] N.Y. Bus. Corp. Law § 717 (a) provides:
A director shall perform his duties as a director, including his duties as a member of any committee of the board upon which he may serve, in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances. In performing his duties, a director shall be entitled to rely on information, opinions, reports or statements including financial statements and other financial data, in each case prepared

24

legislative recognition of the business judgment rule. See Lindner Fund, Inc. v.

Waldbaum, Inc., 82 NY2d 219, 224 (N.Y. 1993). It is consistent as well with the

approach of the Eleventh Circuit in Fed. Deposit Ins. Corp. v. Stahl, 89 F3d

1510 (11th Cir. 1996), a decision that we find persuasive. There, the Eleventh

Circuit addressed the coexistence of the business judgment rule and a Florida

statute that closely resembled OCGA § 7-1-490 (a). The Florida statute

"provided that directors were to perform their duties in good faith, in a manner

---

or presented by:

      (1) one or more officers or employees of the corporation or of any other corporation of which at least fifty percentum of the outstanding shares of stock entitling the holders thereof to vote for the election of directors is owned directly or indirectly by the corporation, whom the director believes to be reliable and competent in the matters presented,

      (2) counsel, public accountants or other persons as to matters which the director believes to be within such person's professional or expert competence, or

      (3) a committee of the board upon which he does not serve, duly designated in accordance with a provision of the certificate of incorporation or the by-laws, as to matters within its designated authority, which committee the director believes to merit confidence, so long as in so relying he shall be acting in good faith and with such degree of care, but he shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause such reliance to be unwarranted. A person who so performs his duties shall have no liability by reason of being or having been a director of the corporation.

25

reasonably believed to be in the best interests of the corporation, and with such care as an ordinary prudent person in a like position would use under similar circumstances." 89 F3d at 1516 (punctuation and emphasis omitted). That statute, the Eleventh Circuit said, "clearly established an ordinary negligence standard of director liability." Id. But the statutory standard was not inconsistent with the business judgment rule, for, as the Eleventh Circuit explained:

> The court-made [business judgment rule] does not change [the Florida] statutory simple negligence standard to a gross negligence standard; it merely protects directors who exercised reasonable diligence in the first instance from liability on the merits of their business judgment, unless they acted fraudulently, illegally, oppressively, or in bad faith.

Id. at 1518. We conclude that the business judgment rule acknowledged at common law in the decisions of this Court is consistent with, and has not been superseded by, OCGA § 7-1-490 (a).

As our citation of Stahl suggests, however, the absolute rule of Flexible Products and Brock Built — a rule that *all* claims that sound in ordinary negligence are barred by the business judgment rule, leaving room only for claims of gross negligence against officers and directors — does not fare as well in the face of the statute. The implication of the liability provision in OCGA §

26

7-1-490 (a), as we have explained, is that bank officers and directors may be liable for a failure to exercise ordinary care with respect to the way in which business decisions are made. Flexible Products and Brock Built are inconsistent with that implication. Moreover, even if the statute could be read to *allow* the rule described in Flexible Products and Brock Built, it certainly cannot be read reasonably to *require* or even *suggest* that rule. The absence of support in the Banking Code for Flexible Products and Brock Built is fatal to the contention that the variant of the business judgment rule described in those decisions applies in this case. As we have said, Flexible Products and Brock Built find no support in our common law. If these decisions are sound, it is only because their rule is required or at least suggested by the statutory law. At least in the context of *bank* officers and directors, Flexible Products and Brock Built have no such statutory support. Accordingly, we must conclude that the business judgment rule described in Flexible Products and Brock Built has no application to bank officers and directors.

Flexible Products and Brock Built involved non-bank officers and directors. But as much as the Banking Code, the provisions of the Business Corporation Code of 1989 upon which the Court of Appeals relied in Flexible

27

Products — and in Brock Built too, insofar as it cited Flexible Products, see note 6, supra — are inconsistent with the absolute rule articulated in those decisions. Like OCGA § 7-1-490 (a), the Corporation Code requires non-bank officers and directors to "discharge [their] duties . . . in good faith . . . and [w]ith the care an ordinarily prudent person in a like position would exercise under similar circumstances." OCGA §§ 14-2-830 (a) (1), (2) (directors) and 14-2-842 (a) (1), (2) (officers). And also like OCGA § 7-1-490 (a), the Corporation Code provides:

> [An officer or director] is not liable to the corporation or to its shareholders for any action taken as [an officer or director], or any failure to take any action, if he performed the duties of his office in compliance with this Code section.

OCGA §§ 14-2-830 (d) and 14-2-842 (d). Although the Corporation Code seems to leave room for the sort of business judgment rule acknowledged at common law in the decisions of this Court, see OCGA §§ 14-2-830 (comment) and 14-2-842 (comment), the relevant provisions of the Corporation Code are inconsistent with the alternative version of the rule articulated in Flexible Products and Brock Built.

28

This case, of course, involves only bank officers and directors, and so, we could leave Flexible Products and Brock Built as applied to non-bank officers and directors for another day. But what must be done with these precedents is clear enough, and waiting for another case to do so would only create needless uncertainty. Accordingly, we now overrule Flexible Products and Brock Built.

3. Urging the absolute rule described in Flexible Products and Brock Built, the defendants worry in their briefs that, if the law permits even *some* claims against bank officers and directors that sound in ordinary negligence, bank management will be too much deterred from taking risks, to the detriment of Georgia banks and consumers alike. Even if that were so, Flexible Products and Brock Built are inconsistent with OCGA § 7-1-490 (a), and "this Court does not have the authority to rewrite statutes." State v. Fielden, 280 Ga. 444, 448 (629 SE2d 252) (2006). And even if we thought that the variant of the rule described in Flexible Products and Brock Built reflects a more sound policy, "striking the right balance between competing legitimate policy interests is a political question . . . [and] [w]e leave political questions to the political branches . . .." Deal, 294 Ga. at 174 (1) (a), n. 11 (citations omitted). In any event, the worries of the defendants underestimate, we think, the strength of the

29

business judgment rule acknowledged in our early decisions at common law, which, as we have held today, is consistent with the statutory law. In this respect, a few features of that rule and the standard of ordinary care for bank officers and directors deserve some additional discussion.

First, we have spoken throughout this opinion of claims against officers and directors that "sound in ordinary negligence," and those words were chosen purposefully. Although the standard of ordinary care for bank officers and directors looks a lot like the standard usually employed in Georgia with respect to claims of "ordinary negligence," there is an important difference. Our Code defines ordinary negligence as the absence of ordinary diligence, and it defines "ordinary diligence" as

> that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. As applied to the preservation of property, the term "ordinary diligence" means that care which every prudent man takes of his own property of a similar nature. . . .

OCGA § 51-1-2.

Both at common law and by statute, the standard of ordinary care for bank officers and directors is less demanding than the standard of "ordinary

diligence" with which most ordinary negligence claims are concerned. As this Court explained in Woodward:

> [A bank director] is not bound to exercise the same degree of care which a prudent man would exercise in his own business. This is too high a standard. To expect a director under such circumstances to give the affairs of the bank the same care that he takes of his own business is unreasonable, and few responsible men would be willing to serve upon such terms. In the case of a city bank doing a large business, he would be obliged to abandon his own affairs entirely. A business man generally understands the details of his own business, but a bank director cannot grasp the details of a large bank without devoting all his time to it, to the utter neglect of his own affairs. A director is expected to attend the meetings of the board with reasonable regularity, and to exercise a general supervision and control.

149 Ga. at 624 (citation and punctuation omitted). The same limitation appears in the statutory law concerning bank officers and directors, which does not demand the "care which is exercised by ordinarily prudent persons under the same or similar circumstances," OCGA § 51-1-2, but instead requires only the "diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances *in like positions*." OCGA § 7-1-490 (a) (emphasis supplied). In other words, bank officers and directors are only expected to exercise the same diligence and care as would be exercised by "ordinarily prudent" officers and directors of a similarly situated bank.

31

Second, OCGA § 7-1-490 (a) conclusively presumes that it is reasonable for an officer or director to rely upon certain information as a part of the diligence with which the standard of ordinary care is concerned. So long as an officer or director does so in good faith, he

> shall be entitled to rely upon information, opinions, reports, or statements, including financial statements and other financial data, in each case prepared or presented by:
>> (1) One or more officers or employees of the bank or trust company whom the director or officer reasonably believes to be reliable and competent in the matters presented;
>> (2) Counsel, public accountants, or other persons as to matters which the director or officer reasonably believes to be within such person's professional or expert competence; or
>> (3) A committee of the board upon which the director or officer does not serve, duly designated in accordance with a provision of the articles of incorporation or the bylaws, as to matters within that committee's designated authority, which committee the director or officer reasonably believes to merit confidence[.]

OCGA § 7-1-490 (a). If an officer or director relies in good faith on information described in subsection (a), the reasonableness of his reliance cannot be questioned in court.[11]

Finally, the business judgment rule makes clear that, when a business decision is alleged to have been made negligently, the wisdom of the decision is ordinarily insulated from judicial review, and as for the process by which the decision was made, the officers and directors are presumed to have acted in good faith and to have exercised ordinary care. See note 2, supra. Although this presumption may be rebutted, the plaintiff bears the burden of putting forward proof sufficient to rebut it. All together, the limited standard of care, the conclusive presumptions as to reasonable reliance, and the rebuttable presumptions of good faith and ordinary care offer meaningful protection, we think, to officers and directors who serve in good faith and with due care. The business judgment rule does not insulate "mere dummies or figureheads" from

---

[11] Whether the information upon which an officer or director relied is, in fact, the sort of information described in OCGA § 7-1-490 (a) — whether it was, for instance, "prepared or presented by . . . [an] officer[ ] or employee[ ] of the bank . . . whom the director or officer reasonably believes to be reliable and competent in the matters presented" — can be questioned, of course. And good faith can be questioned as well, including by proof that the officer or director "ha[d] knowledge concerning the matter in question that would cause such reliance to be unwarranted." OCGA § 7-1-490 (a).

liability, of course, but it never was meant to do so. To the extent that more protection for officers and directors is desirable, the political branches may provide it. But because the political branches already have spoken — by enacting a statute inconsistent with Flexible Products and Brock Built — this Court cannot.

4. As described above, the business judgment rule precludes some, but not all, claims against bank officers and directors that sound in ordinary negligence. With that qualification, we answer the certified question in the negative.

Certified question answered. All the Justices concur.

Decided July 11, 2014.

Certified question from the United States District Court for the Northern District of Georgia.

Miller & Martin, Michael P. Kohler, Charles B. Lee, Laura E. Ashby, J. Scott Watson, David C. Joseph, for appellant.

Womble, Carlyle, Sandridge & Rice, Robert T. Ambler, Jr., Alston & Bird, Robert R. Long IV, Elizabeth G. Greenman, Steven M. Collins, Brian D. Boone, Jeffrey J. Swart, for appellees.

34

Samuel S. Olens, Attorney General, W. Wright Banks, Jr., Senior Assistant Attorney General, Stephanie K. Burnham, Assistant Attorney General, Bryan Cave Powell Goldstein, Michael P. Carey, John R. Bielema, Jr., Sutherland, Asbill & Brennan, W. Scott Sorrels, Thomas W. Curvin, Valerie S. Sanders, Samuel J. Casey, Nkoyo-Ene R. Eiffiong, Buckley Sandler, Joseph J. Reilly, Katherine B. Katz, amici curiae.