[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  16-17315
_____

D.C. Docket No. 1:12-cv-04156-TWT


FEDERAL DEPOSIT INSURANCE CORPORATION,
as receiver for the Buckhead Community Bank,

Plaintiff – Appellee,

versus

R. CHARLES LOUDERMILK, SR.,
HUGH C. ALDREDGE,
DAVID B. ALLMAN,
MARVIN COSGRAY,
LOUIS J. DOUGLASS, III,
GREGORY W. HOLDEN,
LARRY P. MARTINDALE,
DARRYL L. OVERALL,

Defendants – Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(April 24, 2018)

Before TJOFLAT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF GEORGIA PURSUANT TO O.C.G.A. § 15-2-9

TO THE SUPREME COURT OF GEORGIA AND ITS HONORABLE

JUSTICES:

This appeal involves three unsettled questions of Georgia law that are central to its resolution. The first question is whether Georgia's apportionment statute, O.C.G.A. § 51-12-33, applies to tort claims for purely pecuniary losses against bank directors and officers. The second is whether § 51-12-33 abrogated Georgia's common-law rule imposing joint and several liability on tortfeasors who act in concert. The third is whether, in a negligence action premised upon the negligence of individual board members in their decisionmaking processes, a decision of a bank's board of directors is a "concerted action" such that the board members should be held jointly and severally liable for negligence.

Because these questions are central to the case before us and have not been squarely answered by the Georgia Supreme Court or the Georgia Court of Appeals, we respectfully certify them for resolution.

2

I.

In December 2009, during the financial crisis, the Georgia Department of Banking and Finance ("GDBF") closed the Buckhead Community Bank. Founded in 1998, the bank was a state nonmember bank that was regulated and overseen by the GDBF. The GDBF ordered the bank to be closed after the failure of several large commercial loans the bank issued. The Federal Deposit Insurance Corporation ("FDIC") then took receivership of the bank. Thereafter, the FDIC filed a diversity action against eight former directors and officers of the bank ("the Officers") in the Northern District of Georgia, alleging that the Officers were negligent and grossly negligent under Georgia tort law in their approval of ten commercial real-estate loans. Seven of the Officers were members of the bank's loan committee, and one underwrote one of the loans at issue.

The Officers answered the complaint and moved to dismiss the FDIC's claim, arguing that Georgia's business-judgment rule precluded them from liability for ordinary negligence. The District Court determined that the issue was unsettled under Georgia law and accordingly certified the question to the Georgia Supreme Court. The Supreme Court answered the question in the negative, holding that O.C.G.A. § 7-1-490(a) authorizes ordinary negligence claims against bank officers and directors insofar as those claims are premised on the officers and directors'

3

"failure to exercise ordinary care with respect to the way in which business decisions are made." *FDIC v. Loudermilk*, 761 S.E. 2d 332, 342 (Ga. 2014).

The case continued.  Prior to trial, the parties filed various motions, one of which is relevant to this certified question.  The Directors moved the District Court to instruct the jury to apportion damages among the eight Directors if it found the Directors liable.  The Court denied the request, and the case proceeded to trial.  During the trial, the District Court again denied the Directors' request to instruct the jury to apportion damages.  The jury found that the Directors were negligent in approving four of the ten loans in question.  It thus found the Directors liable and awarded the FDIC $4,986,993 in damages.  Pursuant to the verdict, the District Court entered final judgment in that amount.  The judgment held the Directors jointly and severally liable.  The Directors timely appealed.

## II.

We present the questions in sequence.  Because the final two questions are interdependent, we present them jointly in Subsection B.

## A.

Central to the Directors' appeal is their argument that a retrial is required because the District Court was required by O.C.G.A. § 51-12-33 to instruct the jury to apportion fault among the eight Directors.  In relevant part, the statute reads:

> (a) Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree

4

responsible for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault.

(b) Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.

The determinative question is whether the phrase "injury to person or property" in the statute includes purely pecuniary harm caused by bank directors and officers. The Directors argue that it does. They contend that the plain meaning of "property" clearly includes economic property. They aver that "[p]roperty itself is a broad concept, encompassing all 'the rights in a valued resource such as land, chattel, or an intangible.'" (Quoting *Property*, *Black's Law Dictionary* (10th ed. 2014)). Indeed, they argue, since all tort claims necessarily involve an "injury to person or property," the apportionment statute by its plain terms is "narrowly drawn" and "applies to all types of tort claims."

The Directors observe that Georgia courts have applied the statute in a wide array of cases, including cases involving economic and business torts. (Quoting *I.A. Grp., Ltd. v. RMNANDCO, Inc.*, 784 S.E. 2d 823, 826 (Ga. Ct. App. 2016)

5

(ordering a retrial, in a case involving breach of fiduciary duty and other business torts, when the trial court failed to instruct the jury to apportion damages, "[b]ecause apportionment is mandated"); *Alston & Bird LLP v. Hatcher Mgmt. Holdings, LLC*, 785 S.E. 2d 541, 544 (Ga. Ct. App. 2016) (reversing and requiring apportionment in an attorney malpractice case); *Levine v. Suntrust Robinson Humphrey*, 740 S.E. 2d 672, 678 (Ga. Ct. App. 2013) (observing, in a case about professional negligence, that "the matter of apportioning the fault of Suntrust and any non-parties or Maxim, if any, is a matter for the jury")).  Although the meaning of "injury to person or property" was not at issue in any of these cases, the Directors cite them for the proposition that the Georgia Court of Appeals treated as "obvious" that the apportionment statute applies in tort cases involving purely pecuniary losses.

In contrast, the FDIC argues that § 51-12-33 is "in derogation of the common law" and hence that the definition of "property" in the statute must be construed narrowly.  The Georgia Supreme Court has held unequivocally that § 51-12-33 "displace[s] the common law of apportionment."  *Couch v. Red Roof Inns, Inc.*, 729 S.E.2d 378, 383 (Ga. 2012).  And, according to the FDIC, Georgia law has long recognized a distinction between economic-loss claims and claims typically categorized as injuries "to person or property."  Thus, the FDIC argues, "under a strict construction of the apportionment statute the legislature limited

6

apportionment to *tangible* realty or personalty (or injuries to persons)."  (Emphasis in original).

In support of this construction, the FDIC cites the opinion of the Georgia Court of Appeals in *Neely v. City of Riverdale*, 681 S.E. 2d 677 (Ga. Ct. App. 2009).  In *Neely*, the Court of Appeals stated, "'Property' at common law was limited to tangible realty or personalty.'"  *Id.* at 679 (quoting *City of Atlanta v. J.J. Black & Co.*, 139 S.E.2d 515, 517 (Ga. Ct. App. 1964)).  The Court observed that the statute in question, Georgia's ante litem notice statute (which requires persons suing municipalities in Georgia for "injuries to person or property" to file notice of their intent to sue within six months of the event giving rise to the suit), was in derogation of the common law and thus should be construed narrowly.  *Id.*  The Court then observed that, as a policy matter, notice is not necessary in a contract action because "the city, being a party to the contract, is already on notice as to the existence and the circumstances of the contract which is the basis of the claim."  *Id.*  It accordingly held that the ante litem notice statute, O.C.G.A. § 36-33-5, "is not applicable to suits for breach of contract."  *Id.* at 679.  The FDIC argues that this same reasoning applies in the context of the apportionment statute, and thus the same strict construction of § 51-12-33 is warranted.

Perhaps the FDIC's most persuasive precedent on this point—and the Georgia court decision that comes closest to dealing with the question at hand—is

*City of Atlanta v. Benator*.  714 S.E. 2d 109 (Ga. Ct. App. 2011).  In *Benator*, the

Georgia Court of Appeals held that economic losses resulting from a

municipality's overcharging of utility bills were not injuries "to person or

property" under the ante litem notice statute.  *Id.* at 114.  It cited *Neely* for the

proposition that the ante litem statute was in derogation of the common law and

should be construed narrowly, and noted that the claim—which sought restitution

of the plaintiffs' overpayment—sounded in contract law.  *Id.*  Thus, the Court

observed, like in *Neely*, notice to the City pursuant to the ante litem notice statute

was not necessary.  *Id.*

In addition, the Court of Appeals went on to hold that the claim was not an

"injury to person or property" under the apportionment statute, either.  The

plaintiffs argued that the trial court erred when it denied their motion to dismiss the

City of Atlanta's request for apportionment.  *Id.* at 117.  The plaintiffs cited § 51-

12-33 as proof that "there is no longer a claim for contribution in Georgia."  *Id.*

The Court of Appeals rejected this argument.  It stated that § 51-12-33 "does not

apply to the case before us because we have already determined that this case does

*not* involve 'injury to person or property.'"  *Id.* (emphasis in original).  The Court

did not elaborate further on its holding.  *Benator* is distinguishable from the case at

hand, because even though the Court of Appeals held that § 51-12-33 did not apply

in a case involving purely economic losses, the losses in that case arose from a

8

contractual relationship.  By contrast, the purely economic losses in the instant case arose from tortious conduct.  Nevertheless, *Benator* could support the proposition that § 51-12-33's definition of "injury to person or property" is to be construed narrowly.

The FDIC further argues that the Georgia Code "itself supports a distinction between common-law injury to person or property and breaches of duty owed to a bank."  It observes that Title 51 of the Georgia Code deals with "Torts," while a separate section of the Code, Title 7, provides a right of action for a person to compel bank directors and officers "to account for [their] official conduct," including "[t]he neglect of, failure to perform, or other violation of his duties in the management of the bank."  (Quoting O.C.G.A. § 7-1-493).  Moreover, says the FDIC, when the Georgia Legislature amended the Code in 2005 to require apportionment, it did not repeal or alter O.C.G.A. § 51-12-32, which allows for contribution among tortfeasors held jointly and severally liable.  The FDIC argues that if § 51-12-33 abolished joint and several liability in all tort actions, this provision would be "'mere surplusage,' which is strongly disfavored by the Georgia courts when construing a statute."  (Quoting *Labovitz v. Hopkinson*, 519 S.E. 2d 672, 677 (Ga. 1999); *Porter v. Food Giant, Inc.*, 402 S.E. 2d 766, 768 (Ga. Ct. App. 1991)).

B.

In addition, the FDIC argues that, notwithstanding § 51-12-33's impact on joint and several liability in tort claims in general, Georgia's common-law rule imposing joint liability on tortfeasors who act in concert still operates. Comment a to § 15 of the Restatement (Third) of Torts: Apportionment of Liability (Am. Law Inst. 2000) states:

> The provision for joint and several liability for persons engaged in concerted action applies regardless of the rule regarding joint and several liability for independent negligent tortfeasors in the jurisdiction. . . . [I]n jurisdictions that have modified or abolished joint and several liability, the rule adopted in this Section imposes joint and several liability on all persons engaging in concerted action and, to that extent, supersedes the abolition or modification of joint and several liability.

The comment further observes that no precedent has been found in which "joint and several liability of tortfeasors engaged in concerted action has been abrogated or modified." *Id.* The FDIC argues that allowing apportionment in cases involving concerted action by tortfeasors would in fact destroy "the essence of the doctrine of concerted action." (Quoting *Woods v. Cole*, 693 N.E. 2d 333, 337 (Ill. 1998)). Hence, the FDIC argues, because the Directors' approval of the loans at issue amounted to concerted action, joint and several liability was appropriate regardless of § 51-12-33's general application to torts involving only pecuniary losses.

10

The Directors counter that this rule does not apply to the action here because the Directors "did not engage in concerted action." They contend that the FDIC's action was brought against the Directors on the basis of their individual behavior and decisionmaking, and its arguments at trial called on each Director to account for his own conduct in approving the loans. Indeed, the Directors argue, O.C.G.A. § 7-1-494(b) "recognizes that a director may disagree with or vote against the board's decision," which indicates that Georgia law does not treat a bank's board as a "cartel."

Furthermore, the Directors argue that the Georgia Supreme Court's decision in *Loudermilk* runs counter to the FDIC's concerted-action argument. They aver that the *Loudermilk* decision "focuses the negligence analysis on each individual board member's decisional process, and assumes that a bank's directors and officers can vary in their levels of good faith and due care and thus in their comparative liability." This is reflected in the complaint: there, the FDIC set forth allegations against each director individually and did not rely solely upon the act of approving the loans. Thus, the Directors say, without regard to whether § 51-12-33 abrogated joint and several liability in concerted-action torts, apportionment is required in this case because the decision of a bank's board of directors is not concerted.

11

In sum, resolution of this issue depends on the answer to two interdependent questions: first, whether Georgia's rule imposing joint and several liability on tortfeasors acting in concert survives; and second, if so, whether a decision of a bank's board members qualifies as such a concerted action when the claim against those directors is premised on each director's negligence in his decisional processes leading up to the board's action.

### III.

Because no Georgia Supreme Court decision has yet addressed these consequential state-law questions, we respectfully ask the Court to answer them.

**QUESTION CERTIFIED.**