**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 22, 2021**

# In the Court of Appeals of Georgia

A20A1548. FERDINAND v. FULTON COUNTY.

HODGES, Judge.

This appeal arises from a declaratory judgment action brought by Arthur E. Ferdinand, in his capacity as the Fulton County Tax Commissioner, after Fulton County thwarted Ferdinand's attempt to give several of his employees a bonus which was not commensurate with the pay schedules of the Fulton County civil service system. Specifically, Ferdinand sought a declaration that unclassified employees in his office are not subject to the Fulton County Civil Service Act, as amended in 2013, such that he can unilaterally control their compensation within the boundaries of his office's budget. The trial court ruled against Ferdinand, and for the following reasons, we affirm the trial court's judgment.

We start by recognizing that

[t]he purpose of the Declaratory Judgment Act is to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; it is to be liberally construed and administered. Under the Declaratory Judgment Act, the superior court is authorized to enter a declaratory judgment upon petition therefor in cases of actual controversy, and to determine and settle by declaration any justiciable controversy of a civil nature where it appears to the court that the ends of justice require that such should be made for the guidance and protection of the petitioner, and when such a declaration will relieve the petitioner from uncertainty and insecurity with respect to his rights, status, and legal relations.

(Citations and punctuation omitted.) *Capitol Infrastructure, LLC v. Plaza Midtown Residential Condo. Assn.*, 306 Ga. App. 794, 798 (1) (702 SE2d 910) (2010). The parties here have stipulated to the pertinent facts, and "[t]his Court reviews de novo issues of law decided by the trial court." *ALR Oglethorpe, LLC v. Fidelity Nat. Title Ins. Co.*, 352 Ga. App. 363, 364 (1) (834 SE2d 866) (2019).

To understand this dispute, we must first discuss the history of Fulton County's civil service system as it has evolved over the years. Throughout its history, the civil service system has divided employees between two classes of service: classified and unclassified. As the civil service system has been amended over time, the rights afforded to members of the unclassified service have expanded, though have

2

remained less significant than the rights afforded to members of the classified service. Additionally, the obligations owed by the county to members of the unclassified service have expanded. Although the scope of employees in the classified service remained fairly stable throughout most of the civil service system's history, in 2013 the General Assembly froze its membership, which will have the continuing effect of shrinking the size of the classified service over time. With this framework in mind, we turn to relevant amendments to the civil service system since its inception in 1943. Our review of the totality of the present Fulton County civil service system, as opposed to simply looking at phrases in isolation and out of context, leads us to the conclusion that it covers employees in the unclassified service.

*The 1943 Act*

"Pursuant to a 1939 amendment to the Georgia Constitution ("the 1939 Amendment"), the Georgia General Assembly enacted a law in 1943 creating a civil service and/or merit system for Fulton County. 1943 Ga. L., p. 971 ("the 1943 Act")." *Ferdinand v. Bd. of Commrs. of Fulton County*, 281 Ga. 643, 644 (1) (641 SE2d 787) (2007) ("*Ferdinand I*"). Relevantly, the 1943 Act provided that its purpose included establishing to which "employees the provisions of this Act shall be applicable" and "for the classification and qualification of employees[.]" 1943 Ga. L., p. 971. The

3

1943 Act defined the "Classified Service" as "all offices and positions of trust and employment in the service of Fulton County except those placed in the unclassified service by this Act, and those covered by other Civil Service Acts enacted heretofore." Id. at p. 973. It further specified that the "Classified Service shall include all other public officers and employees in the employ of . . . the office of the . . . Tax Collector, Tax Receiver . . ."[1] Id. at p. 980. The 1943 Act makes little mention of the unclassified service, except to define specific positions which are unclassified and to provide for a process by which unclassified employees could opt-in to the classified service. See generally id.

*The 1982 Act*

"Pursuant to its authority under the 1939 Amendment, which was continued in force and effect by Art. VII, Sec. X, Par. I of the Georgia Constitution of 1945 and by Art. XIII, Sec. I, Par. II of the Georgia Constitution of 1976, the General Assembly passed a 1982 law that revised the Fulton County civil service system. 1982 Ga. L.,

---

[1] "Without removing these aforementioned employees from the civil service system, the General Assembly consolidated the Fulton County offices of Tax Receiver and Tax Collector into the new office of Fulton County Tax Commissioner in 1951. 1951 Ga. L., p. 3006 ("the 1951 Act"); see also Ga. Const. of 1945, Art. IX, Sec. I, Par. VI (currently Ga. Const. of 1983, Art. IX, Sec. I, Par. III(c))." *Ferdinand I*, 281 Ga. at 644 (1).

4

p. 4896 ("the 1982 Act")." *Ferdinand I*, 281 Ga. at 644 (1). The 1982 Act identified its purpose, in part, as being "[t]o completely and exhaustively revise, supersede, consolidate and replace all of the law and amendments thereto pertaining to the Fulton County Personnel Board and the Fulton County Merit System of Personnel Administration (Civil Service)[.]" 1982 Ga. L., p. 4896.

The 1982 Act identifies in Section 3 the "[p]owers, duties, and responsibilities of the personnel board" of the county. 1982 Ga. L., p. 4898. Among those is a duty "[t]o submit appropriate recommendations to the county manager and the board of commissioners concerning new or revised position classifications, salary ranges, salary rates and schedules, compensation plans, and other similar documents, policies, and procedures relating to the business of the board[.]" Id. at 4899. With regard to the definition of the classified service, Section 6 of the 1982 Act provided that "the 'classified service' to which this Act applies shall comprise all tenured classes and positions in the Fulton County Merit System now existing or that may hereafter be established except for those specifically designated as being in the 'unclassified service' . . ." Id. at p. 4902.

Although the 1943 Act made little mention of the unclassified service, those employees are mentioned more in the 1982 Act, which identified several new

5

purposes, including "to provide for the certification of payrolls." 1982 Ga. L., p. 4896. To that end, Section 5 of the 1982 Act identified as a duty of the county personnel director to "check and certify *all payrolls* and exceptions relating to the pay of *all Fulton County employees . . .*" (Emphasis supplied.) Id. at p. 4902. Section 8 further provided that "[p]ayment shall not be made to *any classified or unclassified employee* unless the payroll bears the certification of the personnel director or his authorized agent . . . *in accordance with the provisions of this Act . . .*" (Emphasis supplied.) Id. at p. 4904. Specifically, the certification must be "a single omnibus certificate prepared covering the payrolls for each department and *all employees therein*" and it must state that the personnel director "certif[ies] that the records of the personnel department indicate that the employees listed on this payroll were appointed *within the provisions of the Civil Service Act*; that the positions listed were approved by the county manager and board of commissioners; *and that the salaries are in accordance with the pay schedule and compensation plan.*" (Emphasis supplied.) Id. at pp. 4904-4905.

Section 9 of the 1982 Act provides for penalties and appeals. It identifies certain appeal rights available to employees in the classified service. As for the unclassified service, it provides that they "do not have the right to appeal disciplinary

6

actions taken against them to the personnel board, but such employees may file grievances through supervisory channels." 1982 Ga. L., p. 4906.

*The 1994 Act*

In 1994, the General Assembly amended the Fulton County civil service system again (the "1994 Act"). It added a new section, Section 15, which provided whistleblower protections for both classified and unclassified employees. 1994 Ga. L., p. 4838. These provisions helped protect the identity of whistleblowers and shielded them from retaliation. Id. at pp. 4838-4840. It further provided that "[a]ny action taken in violation of [the subsection preventing retaliation against a whistleblower] shall give the county employee a right to have such action set aside by the personnel board after a hearing." Id. at p. 4840.

*The 1995 Act*

The Fulton County civil service system was amended yet again in 1995 (the "1995 Act"). Among the amendments made in 1995 were changes to the grievance procedures for both classified and unclassified employees under Section 9. After outlining the appeal rights provided to classified employees following an adverse employment action, the 1995 Act provides that

7

[a]ll other employees do not have the right to appeal disciplinary actions taken against them to the personnel board, *but such employees may file grievances through supervisory channels.* The ability to file a grievance in no way gives any employee a property interest in employment. A grievance cannot be construed to convert any demotion, suspension without pay, dismissal, or other disciplinary action taken for cause under the disciplinary provisions of the personnel regulations. Detailed procedures for the conduct of an appeal to the personnel board shall be set forth in the personnel regulations as provided by this Act. In the event that a terminated employee's liberty interest is violated, such employee shall be provided with a name-clearing hearing. The personnel board shall conduct name-clearing hearings for terminated permanent classified employees. *The grievance review committee shall conduct name-clearing hearings for all other terminated employees. Detailed procedures for the conduct of a name-clearing hearing shall be set forth in the personnel regulations as provided by this Act.*

(Emphasis supplied.) 1995 Ga. L., p. 3892.

*The 2013 Act*

The General Assembly amended the Fulton County civil service system again in 2013 (the "2013 Act"). 2013 Ga. L., p. 4422. The 2013 Act specifies that part of its purpose is "to provide that all future employees of Fulton County other than public safety employees shall be unclassified; to provide for current classified employees; to provide that employees may be dismissed, demoted, or disciplined for any reason

8

or no reason without notice, explanation or appeal . . ." Id. at p. 4423. The 2013 Act revised the definition of the classified service in Section 6 as follows: "The 'classified service' to which this Act applies shall comprise classified employees who have successfully completed their probationary period on the effective date of this Act." Id. at p. 4424.

Section 9 was amended to provide that

[a]ll unclassified employees shall be employees at will. An appointing authority may dismiss, demote, suspend, or otherwise discipline any Fulton County employee for any reason, other than for reasons otherwise prohibited by state or federal law, or for no stated reason whatsoever. No employee shall be entitled to prior notice of, or explanation of, or appeal from any such action.

2013 Ga. L., p. 4425. Section 9 was further amended to provide that "[w]ithout limiting the scope of authority granted [above], it is the intent of the General Assembly that Fulton County *shall* treat *all employees* in accordance with" principles concerning fairness, non-discrimination, proper training, and similar ideals. (Emphasis supplied.) Id. at pp. 4425-4426. One of these principles is for "[p]roviding equitable and adequate compensation based on merit, performance, job value, and competitiveness within applicable labor markets." Id.

9

Notably, Section 8 of the Civil Service Act, which requires the certification of payroll for all employees, was not amended by the 2013 Act, nor were Section 9's name-clearing process for unclassified employees or Section 15's whistleblower protections.

With this history in mind, we turn to the particulars of the present dispute. We first note that this case presents the second time that the issue of Ferdinand's ability to pay his employees outside the confines of the Fulton County civil service system has been presented to the appellate courts of this State. In 2005, Ferdinand attempted to raise the salaries of specified tax commissioner employees, which request was denied by Fulton County on the basis that the salaries of the employees were controlled by compensation regulations implemented pursuant to the civil service system. *Ferdinand I*, 281 Ga. at 643. In 2007, based on the language of the 1982 Act in effect at that time, the Supreme Court held that the employees of the tax commissioner's office were classified, and thus subject to the compensation limitations of the civil service system's regulations. Id. at 645 (1).

Following the 2013 amendment to the civil service system, Ferdinand again attempted to compensate certain employees in a manner which was not in line with the system's regulations. Specifically, he submitted a request to Fulton County

10

seeking to pay bonus compensation to specified employees of his office whose jobs are undisputedly in the unclassified service. When the request was denied, Ferdinand filed a declaratory judgment petition, in which he contends that

> [t]he specific legal issues ripe for a judicial determination and declaratory judgment in this action are (1) whether four unclassified Fulton County Tax Commissioner employees are subject to the compensation and payroll policies of Fulton County, Georgia, (2) whether, because said employees are in unclassified positions, they are subject to the Fulton County Merit System at all, and (3) whether the Tax Commissioner has the authority and discretion to use his approved budget to compensate said employees as he believes is appropriate, to include issuance of monetary awards or bonuses for unclassified staff.

The parties stipulated the pertinent facts and filed cross-motions for summary judgment. In his motion for summary judgment, Ferdinand relied heavily on the language from Section 6 of the 2013 Act which states "[t]he 'classified service' *to which this Act applies*" for the proposition that the civil service system only applies to the classified service. (Emphasis supplied.) 2013 Ga. L., p. 4424. The trial court granted summary judgment to Fulton County, and Ferdinand timely appealed.

11

In related enumerations of error which he addresses collectively, Ferdinand contends that the trial court erred in finding that unclassified employees are subject to the Fulton County civil service system. We disagree.

Not only has the law been amended since *Ferdinand I*, but as a result, the legal issue presented here is different as well. *Ferdinand I* found that the employees of the tax commissioner's office were classified, and thus unquestionably bound by the pay schedules established pursuant to Fulton County's civil service system. 281 Ga. at 645 (1). That case did not need to analyze the distinction between employees in the classified service versus unclassified service given the facts present there. Accordingly, the instant case presents an entirely novel legal question.

It is axiomatic that "[w]ell-established principles of statutory construction require that the literal meaning of the words of a [local law] must be followed unless the result is an absurdity, contradiction, or such an inconvenience that it is clear that the legislature must have intended something else" and we "must seek to effectuate the intent of the legislature." (Citations and punctuation omitted.) *Colonial Life & Acc. Ins. Co. v. Heveder*, 274 Ga. App. 377, 379 (618 SE2d 39) (2005). It would have aided our analysis if the General Assembly had clearly, plainly, and directly stated whether it intended for the unclassified service to be wholly excluded from the Fulton

12

County civil service system, as it has done with other merit systems. See e.g. 1989 Ga. L., p. 3870 (Cobb County's civil service system provides that "[a]n individual employed in a classified position shall be entitled to the benefits and protections of this Act, whereas an individual in an unclassified position shall receive none of the benefits or protections of this Act.") The General Assembly did not do so, and we are thus required to turn to other canons of construction to answer the question presented to us.

> When we consider the meaning of a [local law], we must presume that the General Assembly meant what it said and said what it meant. To that end, we must read the [ ] text in its most natural and reasonable way, as an ordinary speaker of the English language would. And although the [textual] arguments in this case are chiefly about [the definition of the classified service under Section 6 of the 2013 Act], we must take care not to limit our consideration to the words of [that section of that Act] alone. . . . In our search for the meaning of a particular [local law] provision, we look not only to the words of that provision, but we consider its legal context as well. After all, context is a primary determinant of meaning. For context, we may look to the other provisions of the same [local law], the structure and history of the whole [local law], and the other law—constitutional, statutory, and common law alike—that forms the legal background of the [local law] provision in question.

(Citations and punctuation omitted.) *Fed. Deposit Ins. Corp. v. Loudermilk*, 295 Ga. 579, 588 (761 SE2d 332) (2) (2014). Moreover, "[w]e also must endeavor to give each part of the statute meaning and avoid constructions that make some language mere surplusage or meaningless." (Citation and punctuation omitted.) *Northeast Ga. Cancer Care v. Blue Cross & Blue Shield of Georgia*, 315 Ga. App. 521, 526 (1) (a) (726 SE2d 714) (2012).

Here, our review of the current status of the Fulton County civil service system, which includes the amendments made in 2013, as well as provisions contained in prior versions which were never amended or repealed, demonstrates that members of the unclassified service do fall into the ambit of the civil service system.[2] It is clear that throughout the history of the civil service system, the unclassified service has been excluded from certain provisions and protections which cover the members of

[2] Fulton County argues that a 1947 constitutional amendment established that all employees paid from the county treasury are subject to the merit system. The amendment provides that it will "authorize the General Assembly to include in the Civil Service and/or Merit System heretofore authorized by constitutional amendment for Fulton County any persons (other than officers elected by the people) whose salaries or wages are paid in whole or in part by the Treasurer of Fulton County or out of funds belonging to Fulton County[.]" 1947 Ga. L., p. 1776. We note that there can be a distinction between being granted authority and exercising such authority, but we need not decide whether the scope of the civil service system extends to all employees paid from the county treasury in order to answer the question presented in this appeal.

14

the classified service. Moreover, a review of the amendments to the law made via the 2013 Act clearly demonstrate the legislative intent to limit the members of the classified service by freezing its membership at the time of the amendment. Nonetheless, limiting membership in the classified service is not the same as wholly excluding members of the unclassified service from the scope of the civil service system.

Indeed, to reach a contrary conclusion would require us to read language into the civil service system which is not there. Section 3 of the 1982 Act, which has not since been amended or repealed, provided for the creation of job classifications and pay schedules without limiting such an obligation to positions in the classified service. 1982 Ga. L., p. 4899. It would also require us to ignore several provisions of the system which expressly create rights and obligations for the members of the unclassified service – such as the right of unclassified employees to file grievances and participate in name-clearing hearings, as well as the obligation of the payroll director to certify the pay for unclassified employees. See 1995 Ga. L., p. 3892; 1994 Ga. L., p. 4840; 1982 Ga. L., p. 4904. Indeed, the 1995 Act specifies that the procedures for name-clearing hearings, which are available to unclassified employees, "shall be set forth in the personnel regulations *as provided by this Act*". (Emphasis

supplied.) 1995 Ga. L., p. 3892. It would lead to an impermissibly absurd result to determine that a law does not cover a class of individuals for whom the law creates rights.[3]

Ferdinand's proposed interpretation would also require us to ignore the explicitly stated legislative intent in the 2013 Act that *all* employees *shall* be treated in a certain manner, which includes "equitable and adequate compensation based on merit, performance, job value, and competitiveness within the applicable labor markets." 2013 Ga. L., p. 4425. Ferdinand's interpretation would permit wildly different compensation amongst all of the unclassified employees in his office, as well as between the classified and unclassified employees in his office. Such

---

[3] Although this Court has never previously been directly presented with the question of whether the civil service system covers employees in the unclassified service, this Court has previously assumed as much. *Fulton County v. Andrews*, 332 Ga. App. 473, 478 (1) (773 SE2d 432) (2015) (enforcing pay schedules implemented pursuant to the civil service system with regard to certain employees specifically identified as being members of the unclassified service); *Freeman v. Brandau*, 292 Ga. App. 300, 302 (1) (664 SE2d 299) (2008) ("The local legislation provides that the Fulton County Board of Commissioners and all other officers who are elected by popular vote and persons appointed to fill vacancies in elective offices are included in *the 'unclassified service' to which the civil service act applies*.") (emphasis supplied; citation and punctuation omitted).

16

compensation could be determined by his whim, instead of by the guidelines the legislature explicitly intended to be applied.[4]

Ferdinand focuses heavily on the introductory language of the definition of the classified service in the 2013 Act, which states "[t]he 'classified service' *to which this act applies . . .*" (Emphasis supplied.) 2013 Ga. L., p. 4424. Ferdinand argues that such language demonstrates that the civil service system only applies to the classified service. The language, however, does not mandate such a reading. It is without question that the civil service system applies to the classified service, and this language does not require us to find that the civil system does not also apply to the unclassified service. Moreover, Ferdinand's interpretation looks at a single

---

[4] Ferdinand correctly points out that "[o]rdinarily, employees of constitutionally elected officers of a county are considered employees of the elected officer and not employees of the county, as represented by the local governing authority." *Boswell v. Bramlett*, 274 Ga. 50, 51 (2) (549 SE2d 100) (2001). He attempts to draw a distinction between unclassified employees of the county and unclassified employees of his office under the civil service system. The Georgia constitution provides, however, that "[t]he General Assembly may by general law authorize the establishment by county governing authorities of civil service systems covering county employees or covering county employees and employees of the elected county officers." Ga. Const. 1983, Art. IX, § 1, ¶ IV. Accordingly, it is permissible for the Fulton County civil service system to cover Ferdinand's employees and there is no evidence that the system draws the distinction Ferdinand advances between the county's unclassified employees and Ferdinand's unclassified employees.

introductory clause in isolation without considering that clause within the broader context of the entire civil service system. Our canons of construction do not permit such a myopic view of a single phrase. For the reasons identified above, a review of this phrase within the context of the entire civil service system does not support Ferdinand's interpretation.

Likewise, Ferdinand's reliance on *Civil Serv. Bd. of Fulton County v. MacNeill*, 201 Ga. 643 (40 SE2d 655) (1946) is misplaced. Ferdinand is correct that, in its review of the 1943 Act, our Supreme Court in *MacNeil* stated that "[u]nder [the 1943 Act] employees of Fulton County are divided into two groups. Those placed in 'Unclassified Service' are not under the provisions of the act." Id. at 645 (1). The 1982 Act, however clearly states that one of its purposes was "[t]o completely and exhaustively revise, supersede, consolidate and replace all of the law and amendments thereto pertaining to the Fulton County Personnel Board and the Fulton County Merit System of Personnel Administration (Civil Service)[.]" 1982 Ga. L., p. 4896. Even assuming without deciding that anything contained in the 1943 Act carried forward despite this language, it is clear that the civil service system's treatment of the unclassified service has greatly expanded starting with the 1982 Act and forward. In that time, numerous rights have been granted to members of the unclassified service

18

and obligations have been imposed with regard to the treatment of members of the unclassified service. *MacNeil's* analysis of a version of the local law which has been superseded and dramatically amended is inapposite to our present analysis.

In summary, we find that the proper interpretation of the Fulton County civil service system, as amended in 2013, demonstrates that it covers, at least in part, employees in the unclassified service. Specifically, we find that the trial court properly granted summary judgment to Fulton County on Ferdinand's declaratory judgment petition, thereby preventing Ferdinand from implementing the proposed bonuses at issue, because they do not comply with the compensation regulations of the Fulton County civil service system.

*Judgment affirmed. McFadden, C. J., and Doyle, P. J., concur*.